IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **PEGGY DINKEL,** | : | |
| 2304 Wittington Blvd | : | |
| Alexandria, VA 22308 | : | |
| | : | |
| **VALARIE GADSON** | : | |
| 1603 Aragona Blvd | : | |
| Fort Washington, MD 20744 | : | |
| | : | |
| **and** | : | |
| | : | |
| **DEIDRE BECKFORD** | : | |
| 13619 Colgate Way, #224 | : | |
| Silver Spring, MD 20904, | : | |
| | : | |
| **for themselves and all** | : | |
| **others similarly situated,** | : | **Civil Action No. _____** |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **MEDSTAR HEALTH, INC.** | : | |
| 5565 Sterrett Place | : | |
| Columbia, MD 21044 | : | |
| | : | |
| **and** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **WASHINGTON HOSPITAL CENTER,** | : | |
| 110 Irving Street, NW | : | |
| Washington D.C. 20010 | : | |
| **Defendants.** | : | |
| _____ | : | |

## COLLECTIVE ACTION COMPLAINT

Peggy Dinkel, Valarie Gadson and Deidre Beckford ("Plaintiffs"), by and through their

undersigned attorneys, hereby make the following allegations against MedStar Health, Inc. and

Washington Hospital Center ("Defendants") concerning their acts and status upon actual

knowledge and concerning all other matters upon information, belief, and the investigation of

their counsel:

## NATURE OF ACTION

1.      Plaintiffs contend that Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, et seq. ("FLSA") and the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001, et seq. ("DCMWA"), by knowingly suffering or permitting Plaintiffs and the Class members to perform more than *de minimis* meal-break work and uniform maintenance work without properly compensating them for this work.

## JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over this matter pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

3.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1331 because Plaintiffs' claims arise under the FLSA and also pursuant to 28 U.S.C. §1332(a)(1), because the matter in controversy in this action exceeds $75,000, exclusive of interest and costs and because the parties are residents of different states.

4.      This Court has supplemental jurisdiction over Plaintiffs' DCMWA claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from a common set of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form a part of the same case or controversy.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant Washington Hospital Center resides in this District, Defendant MedStar Health, Inc. conducts substantial business within this District, and because the actions and omissions giving rise to the claims pled in this Complaint occurred in this District.  Venue is also proper in this

District pursuant to 28 U.S.C. § 1391(a) as a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

6.      Plaintiff Peggy Dinkel is an adult citizen of the State of Virginia residing at 2304 Wittington Blvd, Alexandria, VA 22308.  During the relevant period, Ms. Dinkel worked as a Registered Nurse at Washington Hospital Center, was an "employee" of both Defendants as defined by the FLSA and DCMWA and was not exempt from protection under the FLSA or DCMWA for any reason.  During the relevant period, Ms. Dinkel routinely worked more than 40 hours per week, and routinely performed more than *de minimis* meal break and uniform maintenance work without compensation.  Ms. Dinkel has signed and submits herewith an opt-in consent form to join this lawsuit, attached as Exhibit 1.

7.      Plaintiff Valarie Gadson is an adult citizen of the State of Maryland residing at 1603 Aragona Blvd, Fort Washington, MD 20744. During the relevant period, Ms. Gadson worked as an Emergency Services Technician at Washington Hospital Center, was an "employee" of both Defendants as defined by the FLSA and DCMWA and was not exempt from protection under the FLSA or DCMWA for any reason.  During the relevant period, Ms. Gadson routinely worked more than 40 hours per week, and routinely performed more than *de minimis* meal break and uniform maintenance work without compensation.  Ms. Gadson has signed and submits herewith an opt-in consent form to join this lawsuit, attached as Exhibit 2.

8.      Plaintiff Deidre Beckford is an adult citizen of the State of Maryland residing at 13619 Colgate Way, #224, Silver Spring, MD 20904.  During the relevant period, Ms. Beckford worked as a Registered Nurse at Washington Hospital Center, was an "employee" of both Defendants as defined by the FLSA and DCMWA, and was not exempt from protection under

the FLSA or DCMWA for any reason.  During the relevant period, Ms. Beckford routinely worked more than 40 hours per week, and routinely performed more than *de minimis* meal break and uniform maintenance work without compensation.  Ms. Beckford has signed and submits herewith an opt-in consent form to join this lawsuit, attached as Exhibit 3.

9.     Defendant MedStar Health, Inc. ("MedStar") is a company with a principal place of business at 5565 Sterrett Place Columbia, MD 21044.  Defendant MedStar, among its various business operations, owns, controls and/or manages at least nine different health care facilities located in Maryland and the District of Columbia.  Throughout the relevant period, MedStar was an "employer" of Plaintiffs and the Class members as defined by the FLSA and DCMWA, and was actively engaged in the activities described herein.

10.     Defendant Washington Hospital Center ("WHC") is a not-for-profit 926-bed hospital facility located at 110 Irving Street, NW, Washington D.C. 20010.  Defendant WHC is owned and operated by Defendant MedStar and is a member of the MedStar Health system.  Throughout the relevant period, Defendant WHC was an "employer" of Plaintiffs and the Class members as defined by the FLSA and DCMWA and was actively engaged in the activities described herein.

11.     Throughout the relevant period, MedStar and WHC, and all of the other health care facilities under MedStar's ownership and control, have been an integrated enterprise with inter-related operations and centralized control of labor relations and personnel management.  Throughout the relevant period, MedStar and WHC, and all of the other health care facilities under MedStar's ownership and control, acting in a joint venture or as joint employers, formulated, approved, and controlled the improper practices described in this Complaint and, thus, are jointly responsible for the improper practices described herein.  Throughout the relevant

period, MedStar and WHC, and all of the other health care facilities under MedStar's ownership and control, served as each others' agents and worked in concert to accomplish the actions pled here.

## COLLECTIVE ACTION ALLEGATIONS

12.     Plaintiffs bring this collective action to: 1) recover unpaid wages, liquidated damages and other damages related to Defendants' violation of the FLSA for themselves and for all others similarly situated pursuant to 29 U.S.C. §216(b), and; 2) recover unpaid wages, liquidated damages and other damages related to Defendants' violation of the DCMWA for themselves and for all others similarly situated who are employed by Defendants in the District of Columbia pursuant to D.C. Code § 32-1012.

13.     Plaintiffs pursue the requested relief on behalf of the following two sub-classes:

    a.      the "meal-break work sub-class" is defined to include all persons employed by Defendants, their subsidiaries or affiliated companies between May 26, 2008 and the present who were suffered or permitted to perform more than *de minimis* meal-break work for Defendants' benefit, but were not properly compensated for this work; and

    b.      the "uniform maintenance sub-class" is defined to include all persons employed by Defendants, their subsidiaries or affiliated companies between May 26, 2008 and the present who were suffered or permitted to perform more than *de minimis* uniform maintenance work for Defendants' benefit, but were not properly compensated for this work.

14.     Plaintiffs are members of both sub-classes they seek to represent, because they were employed by Defendants during the relevant period and were routinely suffered or permitted to perform:

a.  more than *de minimis* meal break work (*i.e.*, responding to emergency situations, responding to supervisors' instructions, providing patient care and performing typical work duties) for Defendants' benefit without being properly compensated for this work; and

b.  more than *de minimis* uniform maintenance work (*i.e.*, cleaning and maintaining all of the components of their work uniform in good and presentable condition) for Defendants' benefit without being properly compensated for this work.

15.  Although Plaintiffs and the Class members may have had different job titles and/or worked in different locations, this action may be properly maintained as a collective action on behalf of the two indicated sub-classes because, throughout the relevant period:

a.  Plaintiffs and the Class members, regardless of their job title or location, had at least one shared employer;

b.  Defendants controlled all aspects of the work performed by Plaintiffs and the Class members, set and implemented the policies and procedures applicable to their meal break and uniform maintenance work, determined their job titles, job descriptions and responsibilities, issued their work assignments and assigned and supervised their training;

c.  Defendants maintained common scheduling systems and policies with respect to Plaintiffs and the Class members;

d.  Defendants maintained common timekeeping systems and policies with respect to Plaintiffs and the Class members;

e.  Defendants maintained a common overtime pay policy with respect to Plaintiff and the Class members;

f.      Defendants maintained common payroll systems and policies with respect to Plaintiffs and the Class members;

g.      Plaintiffs and the Class members, regardless of their job title or location, were governed by, and subjected to, the same meal-break work policies and practices, and were deprived of wages owed for meal break work;

h.      Plaintiffs and the Class members, regardless of their job title or location, were governed by, and subjected to, the same uniform maintenance work policies and practices, and were deprived of wages owed for uniform maintenance work like cleaning and maintaining various work uniform components;

i.      Defendants' labor relations and human resources systems were centrally-organized and controlled, and shared a common management team that controlled the policies and practices at issue in this case.

16.     Plaintiffs estimate that the Class, including both current and ex-employees over the relevant period, will include several thousand members.  The precise number of Class members should be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from the Class members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b) and D.C. Code § 32-1012.  Given the composition and size of the Class, its members may be informed of the pendency of this action directly *via* U.S. mail, e-mail and/or through the posting of written notices at Defendants' work sites.

## FACTUAL ALLEGATIONS

### Meal Break Work

17.     Throughout the relevant period, Defendants promised to provide Plaintiffs and the Class members with one 30-minute unpaid meal break per shift.

18.     Having promised Plaintiffs and the Class members one 30-minute unpaid meal break per shift, Defendants were obligated to ensure that Plaintiffs and the Class members were completely relieved from all work-related duties during their unpaid meal breaks, or that Plaintiffs were compensated at an appropriate rate for each of their interrupted meal breaks.

19.     Throughout the relevant period, Defendants routinely suffered or permitted Plaintiffs and the Class members to perform meal break work that included, among other things: responding to emergency situations, responding to supervisors' instructions, providing patient care and performing typical work duties ("meal break work").

20.     Plaintiffs are personally familiar with, and were personally affected by, Defendants' meal break work policies and practices.  During the relevant period, Defendants suffered or permitted Plaintiff Dinkel to work during about 90% of her unpaid meal breaks each month without compensation, suffered or permitted Plaintiff Gadson to work during about 60% of her unpaid meal breaks each month without compensation, and suffered or permitted Plaintiff Beckford to work during about 100% of her unpaid meal breaks each month without compensation.  From their observation of and interactions with Defendants' other employees, Plaintiffs understand and believe that other MedStar employees regularly performed more than *de minimis* meal break work without compensation.

21.     Because of the circumstances under which Plaintiffs and the Class members performed meal break work, Defendants routinely failed to record all of the time Plaintiffs and the Class members spent engaged in such work, or include all of this time in calculating the wages paid to Plaintiffs and the Class members.

22.     Throughout the relevant period, Defendants knew that Plaintiffs and the Class members, regardless of their job title or location, regularly performed uncompensated meal break

work because Plaintiffs' supervisors regularly encouraged, instructed, suffered and permitted Plaintiffs and the Class members to perform this work and observed this work being performed on a regular basis.

23.     Throughout the relevant period, Defendants knew that Plaintiffs and the Class members, regardless of their job title or location, regularly performed uncompensated meal break work because Plaintiffs and the Class Members routinely engaged in meal break work on Defendants' premises, in plain sight, and at their supervisors' request.

24.     Throughout the relevant period, Defendants knew that Plaintiffs and the Class members, regardless of their job title or location, regularly performed uncompensated meal break work because Defendants did not provide specially-assigned relief workers to free Plaintiffs and the Class members from their work obligations during unpaid meal breaks.

25.     Throughout the relevant period, Defendants did not implement or enforce sufficient rules, systems or practices to prevent Plaintiffs and the Class members from performing uncompensated meal break work.  To the contrary, Defendants' common policies and practices routinely caused Plaintiffs and the Class members to work during their scheduled, meal breaks.

26.     Throughout the relevant period, Defendants did not implement or enforce sufficient rules, policies or practices to ensure that the meal break work Plaintiffs and the Class members were suffered or permitted to perform was properly tracked.

27.     Throughout the relevant period, Defendants did not implement or enforce sufficient rules, policies or practices to ensure that Plaintiffs and the Class members were properly compensated for all of the meal break work they were suffered or permitted to perform.

28.     As a result of Defendants' conduct, Plaintiffs and the Class members, regardless

of their job title or location, have been regularly deprived of pay owed for meal break work they performed, including pay calculated at the overtime premium rate for meal break work performed in workweeks where Plaintiffs and the Class members worked more than 40 hours.

29.     As a result of their conduct, Defendants have improperly retained money that they should have paid as wages to Plaintiffs and the Class members for meal break work.   By retaining this money, Defendants have received an inequitable windfall through, *inter alia*, reduced labor and operations costs and enhanced profit margins.

## Uniform Maintenance Work

30.     Throughout the relevant period, Defendants maintained, disseminated and enforced policies that required Plaintiffs and the Class members, regardless of their job title or location, to wear a work uniform that consisted of certain standard uniform components.

31.     Throughout the relevant period, Defendants maintained, disseminated and enforced policies that required Plaintiffs and the Class members, regardless of their job title or location, to clean and maintain all the components of their work uniform in good and presentable condition ("uniform maintenance work").

32.     Defendants promulgated and enforced these uniform and uniform maintenance policies for a variety of reasons, each of which inured to its benefit, including: to permit clear identification of the employees in their facilities, to convey the professionalism and competence of their employees; to foster the appearance of safety and security in Defendants' work locations, and to foster unity and camaraderie among Defendants' employees.

33.     Plaintiffs are personally familiar with, and were personally affected by, Defendants' uniform maintenance work policies and practices.   During the relevant period, Defendants suffered or permitted Plaintiff Dinkel to perform about 2-3 hours of uniform

maintenance work each week without compensation, suffered or permitted Plaintiff Gadson to perform about 2-3 hours of uniform maintenance work each week without compensation and suffered or permitted Plaintiff Beckford to perform about 1-2 hours of uniform maintenance work each week without compensation.  From their observation of Defendants' other employees and their interactions with Defendants' other employees, Plaintiffs understand and believe that other employees regularly performed more than *de minimis* uniform maintenance work without compensation.

34.     Throughout the relevant period, Defendants knew that Plaintiffs and the Class members, regardless of their job title or location, regularly performed uncompensated "off-the-clock" uniform maintenance work because such work, by its very nature, could not be completed during assigned work hours or at assigned work locations.

35.     Throughout the relevant period, Defendants knew that Plaintiffs and the Class members, regardless of their job title or locations, regularly performed uncompensated "off-the-clock" uniform maintenance work because Plaintiffs' supervisors regularly encouraged, instructed, suffered and permitted Plaintiffs and the Class members to perform this work.

36.     Throughout the relevant period, Defendants knew that Plaintiffs and the Class members, regardless of their job title or location, regularly performed uncompensated "off-the-clock" uniform maintenance work because Plaintiffs' supervisors observed the results of this work on a regular basis.

37.     Throughout the relevant period, Defendants did not implement or enforce sufficient rules, systems or practices to prevent Plaintiffs and the Class members from performing uncompensated "off-the-clock" uniform maintenance work.   To the contrary, Defendant's uniform and uniform maintenance policies required Plaintiffs and the Class

members to perform "off-the-clock" uniform maintenance work to avoid being written-up, penalized or terminated for improper workplace appearance.

38.     Throughout the relevant period, Defendants did not implement or enforce sufficient rules, policies or practices to ensure that the "off-the-clock" uniform maintenance work Plaintiffs and the Class members were suffered or permitted to perform was properly tracked.

39.     Throughout the relevant period, Defendants did not implement or enforce sufficient rules, policies or practices to ensure that Plaintiffs and the Class members were properly compensated for all of the "off-the-clock" uniform maintenance work they were suffered or permitted to perform.

40.     As a result of Defendants' conduct, Plaintiffs and the Class members, regardless of their job title or location, have been regularly deprived of pay owed for uniform maintenance work they performed, including pay calculated at the overtime premium rate for uniform maintenance work performed in workweeks where Plaintiffs and the Class members worked more than 40 hours.

41.     As a result of their conduct, Defendants have improperly retained money that they should have paid as wages to Plaintiffs and the Class members for uniform maintenance work. By retaining this money, Defendants have received an inequitable windfall through, *inter alia*, reduced labor and operations costs and enhanced profit margins.

**COUNT I**
**Violation of the FLSA**
**(All Class Members)**

42.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

43.     Plaintiffs and the Class members, Defendants' employees, are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

44.     FLSA Section 206 requires employers to pay their employees a minimum wage for all hours worked.

45.     FLSA Section 207(a)(1) states that an employee must be paid an overtime rate, equal to at least 1½ times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

46.     Throughout the relevant period, Defendants expected and required Plaintiffs and the Class members to perform meal break work and uniform maintenance work but failed either to properly track the time Plaintiffs and the Class members spent on these activities, or to properly compensate them for this work.

47.     Plaintiffs and the Class members have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been deprived of wages owed for work they performed, of which Defendants were aware, and from which Defendants derived a direct and substantial benefit.  Plaintiffs and the Class members will continue to suffer a significant loss of income as a result of the policies and practices alleged here unless Defendants are required to alter the practices at issue.

## COUNT II
### Violation of the DCMWA
### (Class Members Employed in the District of Columbia)

48.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

49.     Plaintiffs and the members of the Class who are employed by Defendants in the District of Columbia are "employees" within the meaning of the DCMWA.

13

50.     Defendants have violated, and continue to violate, the DCMWA because of their willful failure to compensate Plaintiffs and the Class members at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek.

51.     As a result of Defendants' violation of the DCMWA, Plaintiffs and the Class members have suffered irreparable harm for which there is no adequate remedy at law.

52.     Pursuant to the DCMWA, Plaintiff and the Class members who are employed by Defendants in the District of Columbia are entitled to recover from Defendants: i) their unpaid wages for all hours worked including overtime compensation; ii) damages and interest for unreasonably delayed payment of wages, and; iii) reasonable attorneys' fees, costs and disbursements of the action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays for an Order:

a.      Requiring Defendants to file with the Court and provide to Plaintiff's  counsel a list of all names and current (or best known) addresses of all individuals whom Defendants, their subsidiaries or affiliated companies employed at any time during the relevant period;

b.      Authorizing Plaintiff's counsel to issue a notice informing the Class members that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

c.      Appointing David J. Cohen of Kolman Ely, P.C. and Gary E. Mason of Mason, LLP as class counsel;

d.      Finding that Defendants willfully violated the applicable provisions of the FLSA and DCMWA by failing to pay all required wages to Plaintiffs and the Class members;

14

e.  Granting judgment in favor of Plaintiffs and the Class members, and against Defendants, on their FLSA and DCMWA claims;

f.  Awarding compensatory damages to Plaintiffs and the Class members in an amount to be determined;

g.  Awarding pre-judgment interest to Plaintiffs and the Class members on all compensatory damages due;

h.  Awarding liquidated damages to Plaintiffs and the Class members;

i.  Awarding Plaintiffs and the Class members a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

j.  Awarding Plaintiffs and the Class members equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

k.  Awarding any further relief the Court deems just and equitable; and

l.  Granting leave to add additional case Plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury in the above-captioned matter.

Respectfully submitted,

Dated: May 26, 2011

Gary E. Mason (D.C. Bar No. 418073)
Nicholas A. Migliaccio (D.C. Bar No. 484366)
MASON, LLP

1625 Massachusetts Avenue, N.W.
Suite 605
Washington, D.C. 20036
(202) 429-2290
gmason@masonlawdc.com

David J. Cohen*
Wayne A. Ely*
KOLMAN ELY, P.C.
414 Hulmeville Avenue
Penndel, PA 19047
(215) 750-3134
dcohen@kolmanlaw.net

*Counsel for Plaintiffs and the Putative Class*

\* *Pro hac vice* admission to be sought.

# EXHIBIT 1

May 25 11 09:22a     Paul Dinkel              703-360-6224              p.1

## CONSENT TO BECOME A PARTY PLAINTIFF

*MedStar Health, Inc. FLSA Litigation*
(United States District Court, District of Columbia)

**Complete and send to:**
Attn: MedStar Health FLSA Action
Kolman Ely, P.C.
414 Hulmeville Avenue
Penndel, PA. 19047
(215) 750-3138 (fax)
dcohen@kolmanlaw.net (email)

I hereby consent to join the lawsuit against MedStar Health, Inc. as a Plaintiff to assert claims for violations of the Fair Labor Standards Act, 29 U.S.C §§ 201 *et seq.,* and the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001, *et seq.*

I hereby designate Kolman Ely, P.C. and Mason, LLP to represent me for all purposes in this action. I also designate the Class Representatives as my agents to make decisions on my behalf concerning the conduct of this litigation and all matters pertaining to this lawsuit.

Between May 2008 and the present, I lived in *Alexandria, VA*
(city, state) and worked for the following MedStar Health, Inc. facility:

*Washington Hospital Center, Wash DC*

_____          _____
25 MAY 2011                      Signature
Date

                                 *PEGGY A. DINKEL*
                                 Print Name

                                 *2305 WITTINGTON BLVD*
                                 Address

                                 *ALEXANDRIA, VA 22308*
                                 City, State, Zip

EXHIBIT 2

May 25 11 09:22a      Paul Dinkel              703-360-6224              p.2

## CONSENT TO BECOME A PARTY PLAINTIFF

*MedStar Health, Inc. FLSA Litigation*
(United States District Court, District of Columbia)

**Complete and send to:**
Attn: MedStar Health FLSA Action
Kolman Ely, P.C.
414 Hulmeville Avenue
Penndel, PA. 19047
(215) 750-3138 (fax)
dcohen@kolmanlaw.net (email)

I hereby consent to join the lawsuit against MedStar Health, Inc. as a Plaintiff to assert claims for violations of the Fair Labor Standards Act, 29 U.S.C §§ 201 *et seq.,* and the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001, *et seq.*

I hereby designate Kolman Ely, P.C. and Mason, LLP to represent me for all purposes in this action. I also designate the Class Representatives as my agents to make decisions on my behalf concerning the conduct of this litigation and all matters pertaining to this lawsuit.

Between May 2008 and the present, I lived in ~~Fort Washington, MI.~~
(city, state) and worked for the following MedStar Health, Inc. facility:

~~Washington Hospital Center~~

~~5/25/2011~~
Date

~~Valarie Gadson~~
Signature

~~Valarie GADSON~~
Print Name

~~1603 Aragona Blvd~~
Address

~~Ft. WASH, MD 20744~~
City, State, Zip

EXHIBIT 3

## CONSENT TO BECOME A PARTY PLAINTIFF

*MedStar Health, Inc. FLSA Litigation*
(United States District Court, District of Columbia)

**Complete and send to:**
Attn: MedStar Health FLSA Action
Kolman Ely, P.C.
414 Hulmeville Avenue
Penndel, PA. 19047
(215) 750-3138 (fax)
dcohen@kolmanlaw.net (email)

I hereby consent to join the lawsuit against MedStar Health, Inc. as a Plaintiff to assert claims for violations of the Fair Labor Standards Act, 29 U.S.C §§ 201 *et seq.*, and the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001, *et seq.*

I hereby designate Kolman Ely, P.C. and Mason, LLP to represent me for all purposes in this action. I also designate the Class Representatives as my agents to make decisions on my behalf concerning the conduct of this litigation and all matters pertaining to this lawsuit.

Between May 2008 and the present, I lived in ___SILVER SPRING, MARYLAND___ (city, state) and worked for the following MedStar Health, Inc. facility:

___WASHINGTON HOSPITAL CENTER___

___5-25-11___
Date

___(Signature)___
Signature

___DEIDRE V BECKFORD___
Print Name

___13619 Colgate Way #224___
Address

___Silver Spring, MD 20904___
City, State, Zip