## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PEGGY DINKEL, VALARIE GADSON, and
DEIDRE BECKFORD, for themselves and all
others similarly situated,

      Plaintiffs,

    v.

MEDSTAR HEALTH, INC., and
WASHINGTON HOSPITAL CENTER,

      Defendants.

Civil Action No. 11-00998 (CKK)

## MEMORANDUM OPINION AND ORDER
(July 29, 2012)

Plaintiffs bring this action against Defendants MedStar Health, Inc. ("MedStar") and

Washington Hospital Center ("WHC"), claiming that Defendants violated the Fair Labor

Standards Act ("FLSA") and the District of Columbia Minimum Wage Act ("DC-MWA") by

failing to compensate them for "meal break" and "uniform maintenance" work.  Currently before

the Court is Plaintiffs' [23] Motion for Order Authorizing Notice to Similarly Situated Persons

Pursuant to 29 U.S.C. § 216(b) ("Motion for Conditional Certification").  Plaintiffs ask the Court

to conditionally certify this case as a "collective action" and to allow notice of the case to be sent

to all non-exempt, hourly employees working in nine MedStar hospitals during any workweek

from May 26, 2008 to the present.  Upon careful consideration of the parties' submissions, the

relevant authorities, and the record as a whole,[1] Plaintiffs' Motion for Conditional Certification shall be GRANTED IN PART and DENIED IN PART.  Specifically, with respect to Plaintiffs' meal break claim, the Court shall conditionally certify this case as a collective action and allow notice to be sent to all non-exempt, hourly employees working in the two specific departments within WHC where Plaintiffs claim to have worked during the relevant time period.  With respect to Plaintiffs' uniform maintenance claim, the Court shall conditionally certify this case as a collective action and allow notice to be sent to all non-exempt, hourly employees at all nine hospitals during the relevant time period.

## I.  BACKGROUND

MedStar owns nine hospitals in the District of Columbia and Maryland.[2]  *See* Pls.' [23] Mem. Ex. A at 1.  The District of Columbia hospitals are Georgetown University Hospital ("GUH"), the National Rehabilitation Hospital ("NRH"), and WHC.  The Maryland hospitals are Franklin Square Medical Center ("FSMC"), Good Samaritan Hospital ("GSH"), Harbor Hospital ("HH"), Montgomery Medical Center ("MMC"), St. Mary's Hospital ("SMH"), and Union Memorial Hospital ("UMH").

Plaintiffs Peggy Dinkel, Valarie Gadson, and Deidre Beckford commenced this action on May 26, 2011 on behalf of themselves and similarly situated employees.  *See* Pls.' [1] Compl. Subsequently, Plaintiffs Marlene Barber, Adama Gibateh, Jovita Ike, Donna Lawrence, Rajini

---

[1]  In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision.  *See* LCvR 7(f).  Furthermore, while the Court bases its decision on the record as a whole, its consideration has focused on the parties' memoranda and accompanying materials.  *See* ECF Nos. [23, 25, 30, 31, 32, 37].  When citing to memoranda or other papers, the Court shall simply identify the party and docket number and provide a brief document descriptor (*e.g.*, "Defs.' [21] Mem.").

[2]  MedStar concedes that it owns all nine hospitals but denies that it exercises sufficient control over each facility to be considered an "employer" for purposes of the FLSA and DC-MWA.  *See* Defs.' [25] Mem. at 4 n.1.  That presents a merits-based question unsuitable for resolution through a motion for conditional certification.  Plaintiffs' allegations suffice at this early stage.

Raj, Vilasini Sarang, and Barbara Townsend each filed a written consent to join in this action as a party-plaintiff. *See* Pls.' [16] Consents. Plaintiffs assert two basic claims. Plaintiffs' "meal break" claim asserts that Defendants violated the FLSA and DC-MWA by failing to compensate them for the time they allegedly spent working during meal breaks. *See* Pls.' [1] Compl. ¶¶ 42-52. Plaintiffs' "uniform maintenance" claim asserts that Defendants violated the FLSA and DC-MWA by failing to compensate them for "off-the-clock" uniform maintenance work. *See id.*

Once Defendants appeared and answered the Complaint, the parties agreed to a discovery period lasting well over three months focusing on whether this case should be conditionally certified as a collective action. *See* [14] Order at 5. The Court authorized each party to take up to ten depositions and to serve up to twenty-five document requests, interrogatories, and requests for admission. *See id.* The discovery period concluded without any meaningful disputes arising. Defendants produced approximately 2,700 pages of documents and answered Plaintiffs' interrogatories. *See* Pls.' [23] Mem. at 12, Ex. S. Although Plaintiffs periodically complain about Defendants' discovery responses, Plaintiffs never filed a motion to compel.

## II.  LEGAL STANDARD

The FLSA and DC-MWA require employers to pay minimum wage for compensable working time and an overtime premium for compensable hours worked in excess of forty hours per week. *See* 29 U.S.C. §§ 206, 207; D.C. Code § 32-1003. Both statutes contemplate what is commonly referred to as a "collective action," in which plaintiffs bring claims on behalf of "similarly situated" employees but those employees do not become part of the action unless and until they "opt-in" by filing a written consent to join as party-plaintiffs. Under the FLSA:

> An action . . . may be maintained against any employer . . . by any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his

> consent in writing to become such a party and such consent is filed
> in the court in which such action is brought.

29 U.S.C. § 216(b).  Similarly, under the DC-MWA:

> [An] [a]ction to recover damages . . . may be maintained . . . by
> any 1 or more employees for and on behalf of the employee and
> other employees who are similarly situated.  No employee shall be
> a party plaintiff to any action . . . unless the employee gives written
> consent to become a party and the written consent is filed in the
> court in which the action is brought.

D.C. CODE § 32-1012(b).

With collective actions, district courts have considerable discretion in managing the

process of joining similarly situated employees in a manner that is both orderly and sensible.  *See*

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Alvarez v. City of Chicago*, 605

F.3d 445, 449 (7th Cir. 2010).  Courts in this Circuit and others have settled on a two-stage

inquiry for determining when a collective action is appropriate:

> The first [stage] involves the court making an initial determination
> to send notice to potential opt-in plaintiffs who may be "similarly
> situated" to the named plaintiffs with respect to whether a[n] FLSA
> violation has occurred.  The court may send this notice after
> plaintiffs make a "modest factual showing" that they and potential
> opt-in plaintiffs together were victims of a common policy or plan
> that violated the law.  * * *  The "modest factual showing" cannot
> be satisfied simply by unsupported assertions, but it should remain
> a low standard of proof because the purpose of this first stage is
> merely to determine whether "similarly situated" plaintiffs do in
> fact exist.  At the second stage, the district court will, on a fuller
> record, determine whether a so-called "collective action" may go
> forward by determining whether the plaintiffs who have opted in
> are in fact "similarly situated" to the named plaintiffs.  The action
> may be "de-certified" if the record reveals that they are not, and
> the opt-in plaintiffs' claims may be dismissed . . . .

*Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citations, quotation marks, and

emphasis omitted), *cert. denied*, 132 S. Ct. 368 (2011); *accord Symczyk v. Genesis HealthCare*

*Corp.*, 656 F.3d 189, 192-93 (3d Cir. 2011), *cert. granted on other grounds*, No. 11-1059, 2012

WL 609478 (June 25, 2012); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-62 (11th Cir. 2008), *cert. denied*, 130 S. Ct. 59 (2009); *McKinney v. United Stor-All Ctrs., Inc.*, 585 F. Supp. 2d 6, 7-8 (D.D.C. 2008); *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 117 (D.D.C. 2004).[3]

At the first stage, often loosely referred to as "conditional certification," the named plaintiffs must present "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 193 (quotation marks omitted). This factual showing has been described as "'not particularly stringent,' 'fairly lenient,' 'flexible,' [and] 'not heavy.'" *Morgan*, 551 F.3d at 1261 (citations and notations omitted). At this stage, district courts should ordinarily refrain from resolving factual disputes and deciding matters going to the merits. *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 520 (D. Md. 2000).

If a class is conditionally certified, similarly situated employees are provided notice of the action and an opportunity to join as party-plaintiffs. After conducting discovery, the parties then proceed to the second stage of analysis, at which point the question is "whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff[s]." *Symczyk*, 656 F.3d at 193.

---

[3] The parties agree that conditional certification is governed by the same standard under the FLSA and DC-MWA. The Court need not and does not question this assumption.

## III.  DISCUSSION

Plaintiffs ask the Court to conditionally certify this case as a "collective action" and to allow notice of the case to be sent to all non-exempt, hourly employees working in nine MedStar hospitals during any workweek from May 26, 2008 to the present.  Here, the Court first addresses conditional certification of Plaintiffs' meal break claim, *see infra* Part III.A, and then turns to Plaintiffs' uniform maintenance claim, *see infra* Part III.B.

A.     *Plaintiffs' Meal Break Claim*

With respect to their meal break claim, Plaintiffs ask the Court to conditionally certify this case as a collective action and to allow notice to be sent to all non-exempt, hourly employees working in nine hospitals during any workweek from May 26, 2008 to the present.  For the reasons set forth below, the Court finds that Plaintiffs have not shown that their broad proposed case is both eligible and suitable for conditional certification, but the Court shall conditionally certify a more narrowly tailored collective action.

1.     The Court Shall Exclude GUH and NRH
       Employees from Plaintiffs' Meal Break Claim

One of the essential factual underpinnings of Plaintiffs' meal break claim, as it has been framed by Plaintiffs themselves, is that the nine MedStar hospitals at issue share a common policy of automatically deducting thirty minutes from associates' total work time for each day to reflect a thirty-minute unpaid meal break.  *See* Pls.' [23] Mem. at 4, 13, Pls.' [30] Mem. at 2-3, 8, 10.  But in making this assertion, Plaintiffs cite only to evidence specifically relating to three hospitals (MMC, UMH, and WHC).  *See* Pls.' [23] Mem. at 4 n.3 (citing Pls.' [23] Ex. N at M-W 000497 (MMC); Pls.' [23] Ex. I at M-W 000512 (UMH); Pls.' [23] Ex. B ¶¶ 2, 5, Ex. C ¶¶ 2, 5, Ex. D ¶¶ 2, 5, Ex. T at M-W 001000 (WHC)).  Moreover, of these three hospitals, the evidence Plaintiffs cite relating to one (UMH) does not actually stand for the proposition

asserted.  *See* Pls.' [23] Ex. I at M-W 000512 (UMH).  As a result, Plaintiffs have not directed

this Court to any evidence suggesting that seven hospitals (FSMC, GSH, GUH, HH, NRH, SMH,

and UMH) follow an "auto-deduct" policy.  Nor has the Court gleaned anything to that effect

from Plaintiffs' exhibits.  *But see Potter v. District of Columbia*, 558 F.3d 542, 553 (D.C. Cir.

2009) ("Judges are not like pigs, hunting for truffles buried in briefs or the record.") (quotation

marks and citation omitted).

Were it not for the concessions made by Defendants in opposition, this might have

spelled the end of Plaintiffs' efforts to secure conditional certification for their meal break claim

insofar as it relates to those seven specific hospitals.  But Defendants have conceded that seven

hospitals (FSMC, GSH, HH, MMC, SMH, UMH, and WHC) follow an auto-deduct policy.  *See*

Defs.' [25] Mem. at 16.  Indeed, Defendants submit evidence to this effect.  *See* Defs.' [25] Ex.

33 ¶ 8, Ex. 40 ¶ 7, Ex. 44 ¶ 7, Ex. 46 ¶ 7, Ex. 57 ¶ 7 (FSMC); Defs.' [25] Ex. 31 ¶ 7, Ex. 32 ¶ 7,

Ex. 42 ¶ 10, Ex. 53 ¶ 7 (GSH);[4] Defs.' [25] Ex. 28 ¶ 8, Ex. 37 ¶ 7, Ex. 43 ¶ 7, Ex. 48 ¶ 8 (HH);

Defs.' [25] Ex. 30 ¶ 7, Ex. 38 ¶ 7, Ex. 39 ¶ 7 (MMC); Defs.' [25] Ex. 36 ¶ 7, Ex. 45 ¶ 8, Ex. 47 ¶

7, Ex. 52 ¶ 7 (SMH); Defs.' [25] Ex. 26 ¶ 7, Ex. 54 ¶ 7, Ex. 56 ¶ 7 (UMH); Defs.' [25] Ex. 2 ¶ 9

(WHC).  Therefore, despite the clear shortcomings in Plaintiffs' factual showing, the Court is

satisfied that seven hospitals (FSMC, GSH, HH, MMC, SMH, UMH, and WHC) share the auto-

deduct policy.

---

[4]  Defendants' Exhibit 35 also pertains to GSH, but the exhibit filed with the Court appears to be missing at least one page.  *See* LCvR 5.4(c)(2) ("A person filing a document by electronic means is responsible for insuring the accuracy of the official docket entry generated by the CM/ECF software.").

Nonetheless, Plaintiffs have failed to direct this Court to any evidence to suggest that two hospitals (GUH and NRH) follow an auto-deduct policy.[5]  Because the existence of an auto-deduct policy is an essential ingredient of Plaintiffs' meal break claim, Plaintiffs have not shown that there is a factual nexus between the manner in which Defendants' meal break policies affected them and the manner in which those policies affected employees at GUH and NRH.  In the absence of any evidence that GUH and NRH follow an auto-deduct policy, it is clear that no matter how lenient the factual showing for conditional certification may be, Plaintiffs have fallen short.  The Court shall therefore exclude employees at GUH and NRH from any collective action relating to Plaintiffs' meal break claim.

2.      The Court Shall Exclude FSMC, GSH, HH, MMC,
        SMH, and UMH Employees from Plaintiffs' Meal Break Claim

With the foregoing limitation in mind, the Court now turns to the seven remaining hospitals (FSMC, GSH, HH, MMC, SMH, UMH, and WHC).[6]  In this regard, another essential factual underpinning of Plaintiffs' meal break claim—again, as it has been framed by Plaintiffs—is that Defendants' auto-deduct policy "was coupled with a common practice of imposing limitations on, discouraging, and ignoring efforts to recover pay for missed meal breaks."  Pls.' [30] Mem. at 3-4; *see also* Pls.' [23] Mem. at 5, 13.  Even though Plaintiffs themselves characterize this assertion as "critical[]," Pls.' [30] Mem. at 3, they support the assertion by citing to evidence specifically relating only to a single hospital (WHC).  *See* Pls.' [23] Mem. at 5 (citing Pls.' [23] Ex. B ¶ 9, Ex. C ¶ 9, Ex. D ¶ 9); Pls.' [30] Mem. at 3-4 (citing

---

[5]  In fact, the record suggests, if anything, that these hospitals do not have an auto-deduct policy and instead manually record meal breaks or require employees to clock-out and clock-in during meal breaks.  *See* Defs.' [25] Ex. 27 ¶¶ 7-8, Ex. 34 ¶¶ 3, 7-8, Ex. 41, ¶¶ 3, 8, Ex. 49 ¶¶ 3, 7-9, Ex. 51 ¶¶ 3, 8 (GUH); Defs.' [25] Ex. 29 ¶¶ 3, 7-8, Ex. 40 ¶¶ 3, 7-8, Ex. 55 ¶¶ 3, 7 (NRH).

[6]  The Court's analysis here would also apply to GUH and NRH if those hospitals had an auto-deduct policy.

Pls.' [23] Ex. B ¶ 9, Ex. C ¶ 9, Ex. D ¶ 9; Pls.' [30] Ex. 1 ¶ 7).  Indeed, even though Plaintiffs

concede that the other six remaining hospitals (FSMC, GSH, HH, MMC, SMH, and UMH)

"maintained policies that allowed their employees to request payment for missed meal breaks,"

Pls.' [23] Mem. at 5; *see also* Pls.' [30] Mem. at 4, Plaintiffs do not present any evidence that

there was a common practice at those six hospitals of imposing limitations on, discouraging, or

ignoring efforts to recover pay for missed meal breaks.

     In the final analysis, Plaintiffs' factual showing for these six specific hospitals (FSMC,

GSH, HH, MMC, SMH, and UMH) is limited to the bare existence of an auto-deduct policy,

which is not by itself the least bit unlawful.  *See White v. Baptist Mem'l Health Care Corp.*, No.

08-2478, 2011 WL 1883959, at *8 (W.D. Tenn. May 17, 2011) ("Standing alone, an employer

policy providing automatic deductions for meal breaks does not violate the FLSA.  Therefore,

[an employer's] mere adoption of a system that, by default, deducts meal breaks from its

employees' compensation does not constitute a unified policy of FLSA violations capable of

binding together [a collective action]."); *see also Blaney v. Charlotte-Mecklenburg Hosp. Auth.*,

No. 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *6 (W.D.N.C. Sept. 16, 2011); *McClean v.

Health Sys., Inc.*, No. 11-03037-CV-S-DGK, 2012 WL 607217, at *6 (W.D. Mo. Feb. 23, 2012).

Again, no matter how lenient the factual showing for conditional certification may be, Plaintiffs

have fallen short by failing to produce any evidence that there was a common practice at these

six hospitals of imposing limitations on, discouraging, or ignoring efforts to recover pay for

missed meal breaks.  The Court, left only with Plaintiffs' unadorned speculation and unsupported

assertions, can only conclude that Plaintiffs have not met their burden of producing some

evidence of a factual nexus between the manner in which Defendants' meal break policies

affected them and the manner in which those policies affected employees at these six specific

hospitals.  Accordingly, the Court shall exclude employees of FSMC, GSH, HH, MMC, SMH, and UMH from any collective action relating to Plaintiffs' meal break claim.

3.      The Court Shall Exclude WHC Employees Outside
Plaintiffs' Departments From Plaintiffs' Meal Break Claim

The question that remains is whether conditional certification is appropriate with respect to WHC.  Plaintiffs seek conditional certification of a collective action that would cover all non-exempt, hourly employees at WHC during the relevant time period.  At any given moment of time, there are over four thousand non-exempt, hourly employees working at WHC and they hold over two hundred and fifty job titles and work in over two hundred departments.  *See* Pls.' [23] Ex. T at M-W 000986-1000; Defs.' [25] Ex. 2 ¶¶ 6-7.  As a result, the proposed collective action would cover "individuals who work in different units . . . , work different shifts and schedules, have different supervisors, are entitled to different rates of pay according to divergent schemes, and hold vastly different job positions and functions spanning the health care occupational gamut."  *Manning v. Boston Med. Ctr. Corp.*, Civil Action No. 09-11463-RWZ, 2012 WL 1355673, at *3 (D. Mass. Apr. 18, 2012).  The Court declines to grant conditional certification for a collective action of this breadth for two independent reasons.

i.      Plaintiffs' Factual Showing is Inadequate

Despite the breadth of the proposed action, Plaintiffs offer a decidedly narrow factual showing.  Plaintiffs worked in one of two departments at WHC: the Emergency Department or the 4NE Medical Cardiology Unit.  *See* Pls.' [26] Decls. ¶ 1; Pls.' [31] Decls. ¶ 1.  Plaintiffs admit they were able to request compensation for missed meal breaks, but contend that they were subject to a common practice of imposing limitations on, discouraging, or ignoring efforts to recover pay for missed meal breaks.  *See* Pls.' [23] Ex. A ¶ 9, Ex. B ¶ 9, Ex. C ¶ 9; Pls.' [31]

10

Decls. ¶ 7.  However, Plaintiffs do not present any evidence that there was a similar practice at departments other than the two in which they work or worked.

Plaintiffs try to make an end-run around the requisite factual showing simply by averring that "[t]hrough their personal observations of, and discussions with, their co-workers during the relevant period, Plaintiffs believe that Defendants' Hospital Employees were subjected to the same meal break work policies and practices and [were] affected the same way by them."  Pls.' [23] Mem. at 5 (citing Pls.' [23] Ex. B ¶ 10, Ex. C. ¶ 10, Ex. D. ¶ 10); *see also* Pls.' [31] Decls. ¶¶ 1, 8.  These unsupported assertions are made in such a conclusory fashion as to be devoid of meaning.  Plaintiffs' declarations lack the sort of factual content that would allow the Court to conclude that Plaintiffs have any personal knowledge of practices or policies outside their specific departments and, if so, which departments.

Once again, no matter how lenient the factual showing for conditional certification may be, Plaintiffs have fallen short by failing to produce any evidence that there was a practice at other departments of imposing limitations on, discouraging, or ignoring efforts to recover pay for missed meal breaks.  Plaintiffs' unsupported assertions are insufficient to discharge their burden of producing some evidence of a factual nexus between the manner in which Defendants' meal break policies affected them and the manner in which those policies affected employees in other departments.  Accordingly, the Court shall exclude employees outside the Emergency Department and the 4NE Medical Cardiology Unit from Plaintiffs' meal break claim.

ii.     Plaintiffs Have Not Shown the
        Proposed Action Would Be Manageable

Even absent this complete gap in Plaintiffs' factual showing, the Court would still decline to conditionally certify a class covering departments outside those in which Plaintiffs claim to have worked because Plaintiffs have not shown that the proposed action would be manageable.

11

This Court has the responsibility to ensure that the action proceeds in a manner that is both "orderly" and "sensible," *Hoffman-La Roche*, 493 U.S. at 170, and in discharging this role, it is appropriate for the Court to take into account the "manageability and efficiency" of proceeding as a collective action, *Chase v. AIMCO Props., L.P.*, 374 F. Supp. 2d 196, 200 (D.D.C. 2005); *see also Bouthner v. Cleveland Constr., Inc.*, Civil Action No. RDB-11-0244, 2012 WL 738578, at *4 (D. Md. Mar. 5, 2012) ("[C]onsideration of issues relating to the manageability of a proposed collective action is appropriate at the notice stage of a[n] FLSA action."); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991) ("[A]s a matter of sound case management, a court should . . . make a preliminary inquiry as to whether a manageable class exists.").   In this particular instance, Plaintiffs' meager factual showing has left the Court unconvinced that a collective action covering at least four thousand non-exempt hourly employees holding over two hundred and fifty job titles and working in over two hundred departments would be manageable.

Plaintiffs concede that WHC "maintained policies that allowed their employees to request payment for missed meal breaks."  Pls.' [23] Mem. at 5; *see also* Pls.' [30] Mem. at 4.  As aforementioned, the mere existence of an auto-deduct policy is not by itself unlawful.  Therefore, Plaintiffs seek to couple WHC's auto-deduct policy with a "practice of imposing limitations on, discouraging, and ignoring efforts to recover pay for missed meal breaks."  Pls.' [30] Mem. at 3-4.  Even at this early stage of the proceedings, the Court cannot turn a blind eye to the fact that such a practice will ultimately turn on the way in which individual supervisors and managers exercised their discretion to manage employees' meal breaks.  Plaintiffs have not suggested, let alone made a factual showing, that there is a workable across-the-board approach for such a determination.  *Cf. Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2554 (2011) (faulting

plaintiffs seeking certification of a class under FED. R. CIV. P. 23 for failing to identify "a common mode of exercising discretion"). The Court would therefore be left to make individualized determinations for each party-plaintiff. *See Blaney v. Charlotte-Mcklenburg Hosp. Auth.*, No. 3:10-CV-492-FDW-DSC, 2011 WL 4351631, at *4-11 (W.D.N.C. Sept. 16, 2011). Plaintiffs have not persuaded the Court that such an approach is manageable. *See Alvarez*, 605 F.3d at 449 (providing that a collective action may be inappropriate if "determining whether any given plaintiff ha[s] a viable claim depend[s] on a detailed, fact-specific inquiry"). Accordingly, the Court shall exclude employees outside the Emergency Department and the 4NE Medical Cardiology Unit from Plaintiffs' meal break claim.

* * *

With respect to Plaintiffs' meal break claim, the Court finds that Plaintiffs have failed to make the requisite showing that their broad proposed case is both eligible and suitable for conditional certification as a collective action. However, the Court finds that Plaintiffs' factual showing is sufficient to warrant conditional certification of a more circumscribed collective action. Specifically, with respect to Plaintiff's meal break claim, the Court shall conditionally certify a collective action covering all non-exempt hourly employees who work or worked in WHC's Emergency Department or 4NE Medical Cardiology Unit in any workweek from May 26, 2008 to the present.

### B.       *Plaintiffs' Uniform Maintenance Claim*

For their uniform maintenance claim, Plaintiffs similarly ask the Court to conditionally certify this case as a collective action and to allow notice to be sent to all non-exempt, hourly employees working at all nine hospitals (FSMC, GSH, GUH, HH, MMC, NRH, SMH, UMH, and WHC) during any workweek from May 26, 2008 to the present. In this regard, Plaintiffs

point the Court to a set of analogous dress and appearance policies that appear to be common

across all nine hospitals.  *See* Pls.' [23] Mem. at 5-6; Pls.' [30] Mem. at 4-5.  Meanwhile,

Defendants' opposition barely acknowledges the existence of Plaintiffs' uniform maintenance

claim, let alone provides any meaningful argument why the Court should deny conditional

certification as to this specific claim.[7]

Defendants were warned that "where a party fails to respond to arguments in opposition

papers, the Court may treat those specific arguments as conceded."  [14] Order at 3; *see also*

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003),

*aff'd*, 98 F. App'x 8 (D.C. Cir. 2004); *Lewis v. District of Columbia*, No. 10-5275, 2011 WL

321711, at *1 (D.C. Cir. Feb. 2, 2011) (*per curiam*).  Furthermore, "[i]t is not enough to mention

a possible argument in the most skeletal way, leaving the [C]ourt to do counsel's work, create the

ossature for the argument, and put flesh on its bones.  * * *  [A] litigant has the obligation to

spell out its arguments squarely and distinctly, or else forever hold its peace." *Schneider v.*

*Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (citation omitted), *cert. denied*, 547 U.S. 1069

(2006).  In the absence of a meaningful opposition from Defendants, the Court exercises its

---

[7]  Defendants note that "[t]he validity of Plaintiffs' uniform maintenance claim is currently the subject of MedStar and WHC's motion for partial summary judgment," Defs.' [25] Mem. at 4 n.2, but the Court has now denied that motion. *See Dinkel v. MedStar Health, Inc.*, Civil Action No. 11-00998 (CKK), 2012 WL 3027391 (D.D.C. July 25, 2012).  The Court observes that Defendants argued in support of that motion that "if the Court concludes that Plaintiffs have created a genuine issue of material fact, then Plaintiffs have demonstrated that they are not similarly situated to the other individuals they seek to represent in this case." Defs.' [29] Mem. at 17.  But that argument is not properly before the Court in connection with the pending motion because it was not presented in Defendants' opposition memorandum, depriving Plaintiffs of the opportunity to respond meaningfully.  In any event, in resolving Defendants' motion for summary judgment, the Court did not conclude that a genuine dispute existed, only that Plaintiffs were entitled to discovery before having to defend against a motion for summary judgment.  Moreover, the premise of Defendants' argument is mistaken: unlike a motion for summary judgment, courts ordinarily do not address disputed factual matters when presented with a motion for conditional certification.

discretion to treat the matter as conceded.  To the extent Defendants have arguments counseling against certification, they must present them at the second stage of the certification analysis though a motion for decertification.

Accordingly, with respect to Plaintiffs' uniform maintenance claim, the Court shall conditionally certify this case as a collective action and allow notice to be sent to all non-exempt, hourly employees working at all nine hospitals during any workweek from May 26, 2008 to the present.  However, the Court shall divide the action into two subclasses, one covering employees at MedStar's District of Columbia hospitals (GUH, NRH, and WHC) and a second covering employees at MedStar's Maryland hospitals (FSMC, GSH, HH, MMC, SMH, and UMH) because Maryland employees are not similarly situated for purposes of applying the DC-MWA.

## IV.  CONCLUSION AND ORDER

Accordingly, it is, this 29th day of July, 2012, hereby

**ORDERED** that Plaintiffs' [25] Motion for Conditional Certification is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED insofar as Plaintiffs seek conditional certification of this case as a collective action and authorization to send notices to the following: (1) with respect to Plaintiffs' meal break claim, all non-exempt, hourly employees who work or worked in WHC's Emergency Department or 4NE Medical Cardiology Unit in any workweek from May 26, 2008 to today's date; and (2) with respect to Plaintiffs' uniform maintenance claim, all non-exempt, hourly employees who work or worked at any of the nine MedStar hospitals at issue during any workweek from May 26, 2008 to today's date, with subclasses for the District of Columbia hospitals (GUH, NRH, and WHC) and the Maryland hospitals (FSMC, GSH, HH, MMC, SMH, and UMH).  Plaintiffs' Motion for Conditional Certification is otherwise DENIED.

It is **FURTHER ORDERED** that the parties shall promptly meet and confer to discuss what information about potential party-plaintiffs should be gathered and to craft appropriate written notices.  By no later than August 15, 2012, the parties shall file a Joint Status Report advising the Court of the status of their efforts and attaching jointly proposed notices.  The Court shall hold a Status Hearing on August 23, 2012, at 9:00 a.m., to discuss further proceedings.

    **SO ORDERED.**

                _____/s/_____
                **COLLEEN KOLLAR-KOTELLY**
                United States District Judge