**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PEGGY DINKEL, VALARIE GADSON, AND DEIDRE BECKFORD, for themselves and all others similarly situated, <br><br>     Plaintiffs <br><br>     v. <br><br> MEDSTAR HEALTH INC. and WASHINGTON HOSPITAL CENTER, <br><br>     Defendants | Civil Action No. 11-998 (CKK) |

**MEMORANDUM OPINION**
(April 16, 2015)

Plaintiffs are employees of Washington Hospital Center who bring this collective action against Defendants MedStar Health, Inc. ("MedStar") and Washington Hospital Center, claiming that Defendants violated the Fair Labor Standards Act ("FLSA") and the District of Columbia Minimum Wage Act ("DC-MWA") by failing to compensate them for "meal break" and "uniform maintenance" work. Before the Court are Defendants' [131] Renewed Motion for Summary Judgment Regarding Plaintiffs' Uniform Maintenance Claim and Defendants' [116] Motion to Exclude Testimony of Plaintiffs' Witnesses.[1] Defendants argue that Plaintiffs' uniform maintenance activities are not compensable in light of the Supreme Court's explication of the relevant standard in *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014). Defendants also argue that the uniform maintenance activities are *de minimis* as a matter of law. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the

---

[1] Also before the Court is Plaintiffs' [135] Motion for Leave to File Sur-Reply in Opposition to Defendants' Third Summary Judgment Motion. The Court grants that Motion and considers the Sur-Reply insofar as it is of assistance to the Court in resolving the pending motion for summary judgment.

[2] The Court's consideration has focused on the following documents:

Court GRANTS-IN-PART and DENIES-IN-PART Defendants' [131] Renewed Motion for

Summary Judgment. The Court concludes that the time spent by the collective members on

uniform maintenance is not compensable under the FLSA because the uniform maintenance

activities are not integral and indispensable to the employees' principal activities and because

they are not principal activities themselves. Therefore, the Court GRANTS the Motion with

respect to Plaintiffs' FLSA claim. However, the Court DENIES the Motion WITHOUT

PREJUDICE with respect to the DC-MWA claim for reasons stated below. Because the Court

concludes that Plaintiffs' FLSA claim does not succeed even if the expert witness testimony they

submitted were admissible, the Court need not resolve Defendants' [116] Motion to Exclude

Testimony at this time. The Court HOLDS that motion IN ABEYANCE pending further

proceedings with respect to Plaintiffs' DC-MWA claim.

## I. BACKGROUND

The pertinent facts in this case were laid out previously by this Court in *Dinkel v.*

*Medstar Health Inc.*, No. CV 11-0998 (CKK), 2014 WL 2885692, at *1 (D.D.C. June 26, 2014);

*Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 51 (D.D.C. 2012); and *Dinkel v. Medstar*

*Health, Inc.*, 286 F.R.D. 28, 30 (D.D.C. 2012). Because the basis for the Court's decision is

---

- Defs.' Renewed Mot. for Summary Judgment Regarding Pls.' Uniform Maintenance Claim ("Defs.' Renewed Mot."), ECF No. 131;
- Pls.' Mem. of Law in Opp'n to Defs.' Third Summary Judgment Mot. ("Pls.' Renewed Opp'n"), ECF No. 133;
- Defs.' Reply Mem. of Points and Authorities in Support of Defs.' Renewed Mot. ("Defs.' Renewed Reply"), ECF No. 134; and
- Pls.' Sur-Reply in Opp'n to Defs.' Third Summary Judgment Mot. ("Pls.' Sur-Reply"), ECF No. 135-3.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

primarily legal in nature, the Court need not recite the facts of this case at length. Therefore, the Court reserves a presentation of relevant facts for the discussion of the individual issues below.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

### A.  Plaintiffs' Uniform Maintenance Activities Are Not Compensable Under the FLSA

In *Integrity Staffing Solutions v. Busk*, the Supreme Court held that "that an activity is integral and indispensable to the principal activities that an employee is employed to perform— and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." 135 S. Ct. at 519. Defendants argue that the uniform maintenance activities in question were neither integral nor indispensable to Plaintiffs' principal activities and, therefore, are not compensable. Plaintiffs first respond that the uniform maintenance activities qualify as principal activities. Plaintiffs next respond that the uniform maintenance activities are compensable because they are

integral and dispensable to their principal activities. The Court concludes that the uniform maintenance activities are neither principal activities nor integral and indispensable to principal activities.[3]

The Court first addresses Plaintiffs' argument that their uniform maintenance activities qualify as principal activities in their own right. Plaintiffs argue that they have "established that the Class members' uniform maintenance activities were part of their principal work duties because their job descriptions required compliance with Defendants' dress and appearance, patient safety and inflectional control policies."[4] Pls.' Renewed Opp'n at 14. However, a requirement to comply with these several policies is not enough to establish uniform maintenance as a principal work activity. An activity is only compensable as a principal activity if the employee is "employed to perform" that activity. *Integrity Staffing Solutions*, 135 S. Ct. at 518 (quoting 29 U.S.C. § 254(a)(1)). *See also id.* at 520 (Sotomayor, J., concurring) (principal activities are "work of consequence that the employees performed for their employer"). MedStar and Washington Hospital Center did not employ Plaintiffs to launder or otherwise maintain their work clothing, but to perform various patient care activities and to perform support and administrative functions in the hospital. *See* Defs.' Statement of Undisputed Material Facts, ECF No. 131-2, ¶ 30.

---

[3] For the purposes of this analysis, the Court assumes that the expert witness evidence relied on by plaintiffs is admissible. Even assuming that this evidence is admissible, the Court concludes that Plaintiffs' FLSA claim does not succeed. Therefore, the Court need not resolve Defendants' motion in limine to exclude the expert testimony at this time.

[4] The Court notes that Plaintiffs previously only argued that the uniform maintenance activities were "integral and indispensable" to their principal activities, not that they were principal activities themselves. *See* Pls.' Mem. of Law in Opp'n to Defs.' Summary Judgment Mot., ECF No. 112-2, at 5.

Furthermore, in setting out the test for activities that are "integral and indispensable" to principal activities, the Supreme Court emphasized that it is error to "focus[] on whether an employer *required* a particular activity." 135 S. Ct. at 519 (emphasis in original). Rather, "[t]he integral and indispensable test is tied to the productive work that the employee is *employed to perform*." *Id.* (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 44 (2005)) (emphasis in original). "Integral and indispensable" activities are a subset of those activities required by the employer or that benefit the employer. *See id.* ("A test that turns on whether the activity is for the benefit of the employer is similarly overbroad."). Similarly whether "an employer required a particular activity" cannot be the proper focus of the inquiry for determining whether an activity was a principal activity itself. Otherwise, an illogical result would obtain: an activity that would not qualify as integral or indispensable to a principal activity could nonetheless qualify as a principal activity. Rather, as emphasized above, the test for a principal activity is whether a person is employed for the purpose of accomplishing a certain activity. It is for this reason that the security screening in *Integrity Staffing Solutions* was not a principal activity even though those employees were required to participate in the screening. *See id.* at 518. Because Plaintiffs are not employed for the purpose of maintaining their own uniforms—regardless of whether uniform maintenance activities are required by Defendants—those activities do not qualify as principal activities.

Next, the Court addresses Plaintiffs' argument that their uniform maintenance activities are compensable because they are "integral and indispensable" to their principal activities. As stated above, "an activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal

activities." *Id.* at 519. An activity must be *both* integral *and* indispensable to be a compensable

activity under the FLSA. *See id.* at 518. It is not enough that an employer required an activity or

that an activity was for the benefit of the employer. *See id.* at 519. Instead, courts must look to

the relationship of the activity in question with "the productive work that the employee is

*employed to perform*." *Id.* (quoting *IBP*, 546 U.S. at 42).

Plaintiffs' argument is based on a misunderstanding of the key Supreme Court precedent,

and therefore fails. Plaintiffs claim that "the Supreme Court distilled the principal [sic] that an

activity that makes an employee's job safer or more efficient constitutes an 'integral and

indispensable' part of their principal activities." Pls.' Renewed Opp'n at 9. Based on this

understanding, Plaintiffs argue that the uniform maintenance activities were integral and

indispensable to their work because "removing infectious pathogens from their uniforms made

their jobs safer and more efficient by minimizing the spread of hospital-acquired infections to

patients, co-workers and family members, reducing lost productivity due to illness, reducing the

cost of replacement workers and mitigating financial losses due to repeat hospital admissions."

Pls.' Renewed Opp'n at 3. However, the Supreme Court never "distilled" that principle. The

Court's opinion in *Integrity Staffing Solutions* never mentions efficiency and the sole reference to

safety does not suggest that safety is a key indicator of whether an activity is "integral and

indispensable." To the contrary, the Supreme Court's reference to safety is in the context of

explaining how the Court's decision is consistent with the position that there is "no distinction

between the searches conducted for the safety of the employees and those conducted for the

purpose of preventing theft," neither of which "were compensable under the Portal–to–Portal

Act." *See Integrity Staffing Solutions*, 135 S. Ct. at 519. It is Justice Sotomayor in her

concurrence in *Integrity Staffing Solutions*, explaining her understanding of the Court's decision,

who concludes that "an activity is 'indispensable' to another, principal activity only when an

employee could not dispense with it without impairing his ability to perform the principal

activity safely and effectively." *Id.* at 520 (Sotomayor, J., concurring). Plaintiffs never cite to

Justice Sotomayor's decision, despite appearing to rely on her analysis, nor do they acknowledge

that their framing of the Supreme Court's test is nowhere to be found in the Court's opinion

itself.

      With respect to Plaintiffs' claim that an activity that increases the *efficiency* of a principal

activity is integral and indispensable to that activity, there is no basis for this understanding of

the Supreme Court's precedent. Without explanation, Plaintiffs replace Justice Sotomayor's

reference to *effectiveness* with an argument based on *efficiency*, as if there is no difference

between the two. Plaintiffs have identified no explicit or implicit basis in the Supreme Court's

decision for their claim that an increase in *efficiency* makes an activity integral and indispensable

to a principal activity. Nor can this Court locate any such basis. Therefore, insofar as Plaintiffs

rely on this understanding of the test set out by the Supreme Court, Plaintiffs' argument fails.

      With respect to Plaintiffs' argument based on safety, Plaintiffs' uniform maintenance

activities are a far cry from the safety-related precedent referenced in *Integrity Staffing Solutions*.

The Supreme Court stated that its opinion was consistent with *Steiner v. Mitchell*, 350 U.S. 247

(1956), in which the Supreme Court previously held that the time battery-plant employees spent

showering and changing clothes was compensable because "the chemicals in the plant were

'toxic to human beings' and the employer conceded that 'the clothes-changing and showering

activities of the employees [were] indispensable to the performance of their productive work and

integrally related thereto.'" *Integrity Staffing Solutions*, 135 S. Ct. at 518 (quoting *Steiner*, 350

U.S. at 249, 251). In explaining her understanding of this case, Justice Sotomayor stated that

"although a battery plant worker might, for example, perform his principal activities without

donning proper protective gear, he could not do so safely." *Id.* at 520 (Sotomayor, J., concurring). In other words, without spending time taking these particular precautions—immediately showering and changing clothes after finishing their work—it would be effectively impossible for the battery-plant employees to do their job. *See Steiner*, 350 U.S. at 247 ("'In the afternoon the men are required by the company to take a bath because lead oxide might be absorbed into the blood stream. It protects the company and the employee both.'"); *id.* (employees changed into employer-provided clothes "since the acid causes such rapid deterioration that the clothes sometimes last only a few days"). The battery-plant employees themselves had to shower and change clothes, not only because their employer required it, but because they risked serious bodily harm if they themselves did not do so immediately. While Plaintiffs suggest that the uniform maintenance activities promote safety, none of the reasons for uniform maintenance approach the way in which the battery-plant employees' activities were critically important— integral and indispensable—to their particular factory jobs. Plaintiffs argue that their uniform maintenance activities were important to the hospital's infection control policy, but they do not argue and they cannot show that their jobs would be so unsafe as to be effectively impossible to carry out their jobs without their uniform maintenance activities. For the battery-plant employees, they themselves had to shower and change immediately at their workplace upon completing their other work. By contrast, the parties do not dispute that Plaintiffs conduct their uniform maintenance activities in a wide variety of ways—from the employees completing all cleaning activities themselves to sharing uniform maintenance responsibilities with family members to taking certain items to professional cleaners.[5] Minimizing infection—even accepting

---

[5] The Court acknowledges that the parties dispute the import of the fact that Plaintiffs use a variety of uniform maintenance techniques.

Plaintiffs' experts' testimony regarding the importance of infection control—does not reach the level of importance to Plaintiffs' principal activities as the showering and changing of the battery-plant employees.

Each of the examples presented by the Supreme Court of activities that are integral and indispensable to principal activities had a close—even intimate—relationship with those principal activities. The time that battery-plant employees spent changing was compensable because the employer in that case conceded that the showering and changing activities were integral and indispensable to the employees' productive work because of the toxic chemicals in use in the plant. *See Integrity Staffing Solutions*, 135 S. Ct. at 518 (citing *Steiner*, 350 U.S. at 249, 251). They were required to wash themselves and change their clothing immediately because of the toxicity of their work environment. Similarly, the time meatpackers spend sharpening their knives was compensable because "dull knives would 'slow down production' on the assembly line, 'affect the appearance of the meat as well as the quality of the hides,' 'cause waste,' and lead to 'accidents.'" *Id.* (quoting *Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956)). Knives were the tool that allowed the employees to do the work they were employed to perform, and sharpening those tools was essential to enabling them to do that work. By contrast, the activities that Supreme Court found were not integral and indispensable to principal activities did not have such an intimate relationship with the related principal activities. Time poultry plant employees spend waiting to don protective gear was noncompensable because it was "'two steps removed from the productive activity on the assembly line.'" *Id.* at 518 (quoting *IBP*, 546 U.S. at 42). Similarly, the Court concluded that security screenings at issue in *Integrity Staffing Solutions* were not "an intrinsic element of retrieving products from warehouse shelves or packaging them for shipment" and that those screenings could have been eliminated "without

impairing the employees' ability to complete their work." *Id.* Plaintiffs here have not shown that
their uniform maintenance activities have the same sort of intimate relationship with their
principal activities—the work that they were employed to perform at Washington Hospital
Center. Indeed, like the noncompensable time that the poultry plant employee spent waiting to
don protective gear, the uniform maintenance activities are "'two steps removed from the
productive activity'" in the hospital. *Id.* (quoting *IBP*, 546 U.S. at 42).

Plaintiffs have not demonstrated that there is a genuine issue of material fact as to
whether the uniform maintenance activities are compensable. Accordingly, because the uniform
maintenance activities are neither principal activities nor integral and indispensable to principal
activities, the Court concludes that they are not compensable under the FLSA.[6]

## B.  Summary Judgment is Appropriate for Defendants with respect to All Class Members

Plaintiffs also argue that Defendants' motion should be limited to the 76 class members
specifically identified in the factual record supporting the summary judgment motion before the
Court. The Court disagrees. Contrary to Plaintiffs' contentions, there is no inconsistency or
unfairness in allowing Defendants to conduct individualized discovery—and dismissing
Plaintiffs for their failure to comply with their discovery obligations—and then allowing
Defendants to rely on a subset of this evidence in supporting their Renewed Motion for
Summary Judgment. Plaintiffs appear to see this as another opportunity to argue that
individualized discovery is inappropriate for this action. The Court has previously rejected that
position, and this is not the time to present those arguments again. In any event, there is no

---

[6] Because the Court concludes that Plaintiffs' uniform maintenance activities are not integral and
indispensable to their principal activities—and are not principal activities themselves—the Court
need not address Defendants' alternative argument that the activities are not compensable
because they are *de minimis* as a matter of law.

reason to limit the scope of the summary judgment motion to the 76 class members specifically identified in the materials supporting the current motion. Most importantly, Plaintiffs never suggest that the evidence pertaining to the other 128 class members would yield a different result than reliance on evidence pertaining to the 76 members of the class explicitly referenced in Defendants' motion and supporting materials. The reasons for granting summary judgment to the Defendants discussed above are not specific to the claims of the 76 members of the class referenced in the currently pending motion. Therefore, summary judgment is equally warranted with respect to all members of the class, whether or not they were identified explicitly in the current briefing.

**C.  Summary Judgment Is Not Warranted on the D.C. Minimum Wage Act Claim**

For the first time in the long history of this litigation, Plaintiffs now argue that the D.C. Minimum Wage Act claim and the FLSA claim should be treated differently. Specifically, Plaintiffs argue that, even if *Integrity Staffing Solutions* mandates the dismissal of the FLSA claims, it does not mandate the dismissal of the DC-MWA claims because the DC-MWA does incorporate references to judicial interpretations of the Portal-to-Portal Act. Because this question has not been sufficiently briefed for the Court to render a decision on this claim, the Court denies without prejudice Defendants' Motion for Summary Judgment with respect to the DC-MWA claim.

The Court notes that Plaintiffs previously appeared to accept the proposition—which they now contest—that precedent interpreting the Portal-to-Portal Act, the 1947 amendments to the Fair Labor Standards Act of 1938, is relevant to the DC-MWA claim. In Defendants' previous Motion for Summary Judgment, which the Court denied without prejudice to allow for re-briefing in light of the Supreme Court's decision in *Integrity Staffing Solutions*, Defendants

based their arguments with respect to both the FLSA claim and the DC-MWA claim on precedent interpreting the Portal-to-Portal Act. More specifically, in a footnote, Defendants cited to cases that stand for the proposition that FLSA cases are construed consistently with the DC-MWA. In Plaintiffs' Opposition to that Motion, Plaintiffs never referenced the DC-MWA, let alone argued that this Court should treat the claims under the DC-MWA differently from the claims under the FLSA. Instead, they relied explicitly on cases interpreting the Portal-to-Portal Act, and never argued that any distinction existed between the proper interpretation of the FLSA and the interpretation of the DC-MWA. Moreover, the Court previously stated, in resolving Defendants' first motion for summary judgment with respect to the uniform maintenance claims and resolving a related discovery motion, that "[n]either Plaintiffs nor Defendants claim that there is any material difference between the FLSA and DC-MWA for purposes of the pending motions." Memorandum Opinion and Order, dated July 25, 2012, ECF No. 36, at 5 n.2. Plaintiffs never contested that statement until they filed their Opposition to the currently pending motion, more than two years later.

Because Plaintiffs are raising this argument at this late date,[7] the parties and the Court have expended significant resources on this case, and yet the Court cannot definitively resolve this issue at this time. Given that the parties have only presented cursory briefing regarding the DC-MWA, the Court requires additional briefing before it can determine whether the DC-MWA claim survives summary judgment. Accordingly, the Court denies without prejudice Defendants' summary judgment motion with respect to the DC-MWA claim. The parties shall file additional

---

[7] Plaintiffs base their new argument on the recent issuance of *Integrity Staffing Solutions* on December 9, 2014, arguing that this recent decision, specifically, does not apply to Plaintiffs' DC-MWA claim. But Plaintiffs have provided no reason to distinguish between the applicability of *Integrity Staffing Solutions* and other cases interpreting the Portal-to-Portal Act, on which they previously relied in arguing that the Court should not grant summary judgment to Defendants.

briefing regarding this claim as laid out in the Order that accompanies this Memorandum

Opinion. Upon the submission of that briefing, the Court will consider Defendants' argument that

the time spent on uniform maintenance was noncompensable because it is *de minimis*.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART

Defendants' [131] Renewed Motion for Summary Judgment. The Court concludes that the time

spent by the collective members on uniform maintenance is not compensable under the FLSA

because the uniform maintenance activities are not integral and indispensable to the employees'

principal activities and because they are not principal activities themselves. Therefore, the Court

GRANTS the Motion with respect to Plaintiffs' FLSA claim and GRANTS summary judgment

to Defendants on the FLSA uniform maintenance claim. However, the Court DENIES the

Motion WITHOUT PREJUDICE with respect to the DC-MWA claim for reasons stated below.

Because the Court concludes that Plaintiffs' FLSA claim does not succeed even if the expert

witness testimony they submitted were admissible, the Court need not resolve Defendants' [116]

Motion to Exclude Testimony at this time. The Court HOLDS that motion IN ABEYANCE

pending further proceedings with respect to Plaintiffs' DC-MWA claim.

An appropriate Order accompanies this Memorandum Opinion.

Dated: April 16, 2015

                               /s/
                               COLLEEN KOLLAR-KOTELLY
                               United States District Judge