**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PEGGY DINKEL, VALARIE GADSON, AND DEIDRE BECKFORD, for themselves and all others similarly situated,<br><br>     Plaintiffs<br><br>     v.<br><br>MEDSTAR HEALTH INC. and WASHINGTON HOSPITAL CENTER,<br><br>     Defendants | Civil Action No. 11-998 (CKK) |

**MEMORANDUM OPINION**
(September 1, 2015)

Plaintiffs are employees of Washington Hospital Center who bring this collective action against Defendants MedStar Health, Inc. ("MedStar") and Washington Hospital Center, claiming that Defendants violated the Fair Labor Standards Act ("FLSA") and the District of Columbia Minimum Wage Act ("DC-MWA") by failing to compensate them for "meal break" and "uniform maintenance" work. On April 16, 2015, the Court granted summary judgment to Plaintiffs on the FLSA uniform maintenance claims. However, the Court denied without prejudice Defendants' motion for summary judgment as it pertained to the DC-MWA uniform maintenance claims because the parties had provided only cursory briefing with respect to the legal standard applicable under the DC-MWA.[1] Plaintiffs subsequently filed a notice outlining the legal basis for their DC-MWA claims, as required by the Court, and Defendants subsequently filed a [141] Renewed Motion for Summary Judgment Regarding Plaintiffs' Uniform Maintenance Claim under the District of Columbia Minimum Wage Act, which is now fully

---

[1] Prior to the briefing on that motion, the parties appear to have assumed the standard applicable to the FLSA uniform maintenance claims would also apply to the DC-MWA claims. *See, e.g.*, *See* Defs.' Mem. of Points and Auth. in Supp. of Defs.' Mot. for Summary Judgment Regarding Pls.' Uniform Maintenance Claim, ECF No. 106-36, at 21 n.3.

briefed and before the Court. Also, before the Court is Defendants' [116] Motion to Exclude Testimony, which was filed together with Defendants' original motion for summary judgment.

The essential prerequisite to resolving this motion is determining the appropriate legal standard for liability under the DC-MWA. This appears to be an issue of first impression. As described in further detail below, each party lays out what it contends is the appropriate standard. However, based on the authority cited by the parties, the Court concludes neither proposed standard is correct. Because the legal standard on which Defendants rely in their Renewed Motion for Summary Judgment in fatally flawed, the Court cannot grant that motion.[2] At the same time, the Court concludes that the standard that Plaintiffs propose is also incorrect. Therefore, the Court will allow Defendants another opportunity to file a motion for summary judgment based on the correct standard under the DC-MWA. Before doing so, it is necessary for the Court to determine the correct legal standard. In this Memorandum Opinion, the Court sets out why neither of the proposed standards is correct. The Court also sets out what it, tentatively, concludes is the correct standard for liability under the DC-MWA based on the materials presented by the parties. However, because neither party has explicitly addressed the standard put forward by the Court, the Court will allow each party an opportunity to respond. The Court

---

[2] Defendants argue, in the alternative, that the Court should grant summary judgment to them on the DC-MWA claims because the uniform maintenance activities are as *de minimis* activities that are not compensable. The Court concludes that it is proper to resolve the legal standard for liability under the DC-MWA before proceeding to the *de minimis* argument. Defendants also argue that uniform maintenance activities are *per se* uncompensable in light of the D.C. regulatory requirement that minimum wage workers receive additional compensation for uniform maintenance activities. *See* D.C. Mun. Reg., tit. 7, § 908. They argue that this requirement gives rise to an inference that the D.C. Council did not intend for time spent maintaining uniforms to be compensable work time. The Court concludes that it would be best to consider any such inference in the context of the proper legal standard for liability under the DC-MWA. Accordingly, the Court does not address those arguments further in this Opinion, and Defendants may raise those arguments once again in a renewed motion for summary judgment after the Court conclusively resolves the question of the legal standard under the DC-MWA.

will then definitively resolve the question of the applicable standard before allowing Defendants an opportunity to file a renewed motion for summary judgment with respect to the DC-MWA uniform maintenance claims. The Court notes that, even if Defendants conclude that a motion for summary judgment is not supportable based on the correct legal standard or if the Court ultimately denies a renewed summary judgment motion, it would be necessary to resolve the legal standard for liability in any case. Therefore, it is in the interest of judicial efficiency to resolve that standard before going forward.

Accordingly, upon consideration of the pleadings,[3] the relevant legal authorities, and the record as a whole, the Court DENIES WITHOUT PREJUDICE Defendants' [141] Renewed Motion for Summary Judgment Regarding Plaintiffs' Uniform Maintenance Claim under the District of Columbia Minimum Wage Act. For the reasons stated below, the Court also DENIES WITHOUT PREJUDICE Defendants' [116] Motion to Exclude Testimony of Plaintiffs' Expert Witnesses. The Court sets out the parameters for further proceedings, including the parties' responses to the legal standard that the Court puts forward below, in the Order that accompanies this Memorandum Opinion.

---

[3] The Court's consideration has focused on the following documents:
- Defs.' Renewed Mot. for Summary Judgment Regarding Pls.' Uniform Maintenance Claim Under the D.C. Minimum Wage Act ("Defs.' Renewed Mot."), ECF No. 141;
- Pls.' Mem. of Law in Opp'n to Defs.' Renewed Mot. ("Pls.' Opp'n"), ECF No. 142-3; and
- Defs.' Reply Mem. of Points and Authorities in Supp. of Defs.' Renewed Mot. ("Defs.' Reply"), ECF No. 143.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. BACKGROUND

The pertinent facts in this case were laid out previously by this Court in *Dinkel v. Medstar Health Inc.*, 304 F.R.D. 339, 349 (D.D.C. June 26, 2014); *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 51 (D.D.C. 2012); and *Dinkel v. Medstar Health, Inc.*, 286 F.R.D. 28, 30 (D.D.C. 2012). Because the basis for the Court's decision is legal in nature, the Court need not recite the facts of this case any further here.

# II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the Court concludes that Defendants do not rely on the proper substantive legal standard for liability under the DC-MWA in moving for summary judgment, the Court does not reach the merits of the motion for summary judgment. The Court must resolve the question of the proper legal standard before addressing whether there are genuine disputes as to any material fact, which can only be considered in the context of the proper standard.

# III. DISCUSSION

This case presents a question of first impression that neither the D.C. Court Appeals nor the D.C. Circuit Court of Appeals nor any district court within this District has squarely addressed.[4] None of the cases that the parties cite provide a direct answer to the fundamental question facing the Court today: what is the standard for liability for activities such as Plaintiffs'

---

[4] As a matter of District of Columbia law, the key question is what the D.C. Court of Appeals would do in these circumstances.

uniform maintenance activities under the DC-MWA?[5] The Court first addresses Defendants'

argument that the "integral and indispensable" standard that is applicable under the FLSA, as

amended by the Portal-to-Portal Act, is applicable under the DC-MWA as well—given that is the

primary basis for their renewed motion for summary judgment. After concluding that this

standard is not applicable to liability under the DC-MWA, the Court addresses Plaintiffs'

proposal for the applicable standard under the DC-MWA.

## A.  Applicability of the "Integral and Indispensable" Standard

In their Renewed Motion for Summary Judgment, Defendants argue that the FLSA

standard for liability for Plaintiffs' uniform maintenance activities is also applicable under the

DC-MWA. As the Court explained in its April 2015 Memorandum Opinion in this case, under

the FLSA, the uniform maintenance activities would only be compensable if they were principal

activities for which Plaintiffs were employed or if they were "integral and indispensable" to

those principal activities. *See Dinkel v. MedStar Health Inc.*, No. CV 11-998 (CKK), 2015 WL

1735078, at *2 (D.D.C. Apr. 16, 2015) (citing *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct.

513, 519 (2014)). The Court concluded that the uniform maintenance activities were neither

principal activities nor "integral and indispensable" to those principal activities. *See id.* at *6.

Therefore, if Defendants were correct that the FLSA "integral and indispensable" standard is

applicable under the DC-MWA, the Court would not need to engage in any further analysis of

---

[5] The only case the Court has found—uncited by parties in the present briefing—that even gestures towards the question at hand is a 1991 unpublished district court case from this district, in which the district court denied a motion to dismiss based on the conclusion that the FLSA and the DC-MWA diverge with respect to the compensability of travel time. *See Calles v. BPA E. Us, Inc.*, No. CIV. A. 91-2298-LFO, 1991 WL 274268, at *1 (D.D.C. Dec. 6, 1991). Even that case is not on point as it pertained to travel time, which is explicitly excluded by the FLSA, and was, at that time, explicitly included in working time under DC-MWA regulations. *See id.* As described below, the D.C. Council subsequently codified the regulations in force at that time in the D.C. Code as part of the DC-MWA.

the record in order to arrive at the conclusion that the uniform maintenance activities are not compensable under the DC-MWA. However, as explained below, the Court concludes that the "integral and indispensable standard" is not applicable under the DC-MWA.

The Court's analysis of the appropriate legal standard under the DC-MWA must begin with the language of the DC-MWA. The DC-MWA defines working time as follows:

> The term "working time" means all the time the employee:
>
> > (A) Is required to be on the employer's premises, on duty, or at a prescribed place;
> >
> > (B) Is permitted to work;
> >
> > (C) Is required to travel in connection with the business of the employer; or
> >
> > (D) Waits on the employer's premises for work.

D.C. Code. § 32-1002(10). The statute itself further states that "[i]nterpretations of what constitutes working time shall be made in accordance with Title 29 of the Code of Federal Regulations, Part 785, Hours Worked Under the Fair Labor Standards Act of 1938, as amended, except that references to interpretations of the Portal-to-Portal Act shall have no force and effect." *Id.* Before proceeding further, that Court notes that it is plain—and the parties agree— that the only provision encompassing the activities subject to the motions before the Court is subsection (B), "all the time the employee … [i]s permitted to work." *Id.* § 32-1002(10)(B). The other three provisions are clearly inapplicable to the uniform maintenance activities in this case. Neither party points to any decisions of the D.C. Court of Appeals—or the D.C. Circuit Court of Appeals or any district court in this district—that directly or indirectly define work under that provision.[6]

---

[6] Plaintiffs cite eight district court cases that, they claim, pertain to the DC-MWA. However, none of those cases addressed the definition of work under the DC-MWA, nor did any of the cases address distinctions between the FLSA and the DC-MWA with respect to the definition of

Accordingly, the Court considers afresh the relationship between the FLSA and the DC-MWA and the definition of work under the DC-MWA. To do so, it is necessary to turn to the text and the history of the FLSA because of links between the FLSA and the DC-MWA. Not only does the current version of the DC-MWA explicitly link the DC-MWA to interpretations of the FLSA, *see* D.C. Code. § 32-1002(10), but the 1966 act, from which the current act is descended, was based by Congress on the FLSA.[7] *See Williams v. W. M. A. Transit Co.*, 472 F.2d 1258,

---

work. *See Freeman v. MedStar Health Inc.*, No. CV 14-628 (CKK), 2015 WL 1570247, at *3 n.2 (D.D.C. Apr. 8, 2015) (denying-in-part and granting-in-part motion to dismiss where the parties agreed that, for the issues relevant to that motion, the same analysis was applicable to the FLSA and the DC-MWA claims); *Thompson v. Digicon Corp.*, No. CV 14-1597 (CKK), 2015 WL 3451674, at *2 (D.D.C. May 29, 2015) (granting motion to dismiss D.C. Wage Payment and Collection Law claim because DC-MWA is the exclusive remedy for the alleged overtime violations); *Bonilla v. Red Bean Sys.*, 61 F. Supp. 3d 145 (D.D.C. 2014) (denying partial motion to dismiss collective action allegations without considering relationship between FLSA and DC-MWA); *Cartagena v. Centerpoint Nine, Inc.*, 303 F.R.D. 109, 111 (D.D.C. 2014) (denying partial motion to dismiss that was based on failure to comply with court-ordered deadline); *Guevara v. Ischia, Inc.*, 47 F. Supp. 3d 23, 24 (D.D.C. 2014) (resolving partial motion for summary judgment without addressing the definition of work under the DC-MWA); *Marroquin v. Country Choice, LLC*, 70 F. Supp. 3d 1, 7 (D.D.C. 2014) *appeal dismissed*, No. 14-7173, 2015 WL 3372535 (D.C. Cir. May 21, 2015) (granting motion for default judgment where definition of work was not in question); *Sarceno v. Choi*, 66 F. Supp. 3d 157, 159 (D.D.C. 2014) (denying motions for summary judgment without considering relationship between the FLSA and the DC-MWA claims); *Driscoll v. George Washington Univ.*, 938 F. Supp. 2d 19, 25 (D.D.C. 2013) (resolving partial motion for summary judgment regarding D.C. Wage and Payment Collection Law where defendant did not dispute whether complaint stated a claim under the DC-MWA). Plaintiffs also look to several cases from California state and federal courts regarding the impact of recent FLSA precedent on interpretations of California state wage laws. *See, e.g., Miranda v. Coach, Inc.*, No. 14-CV-02031-JD, 2015 WL 1788955, at *2 (N.D. Cal. Apr. 17, 2015). However, these cases provide no assistance regarding the interpretation of the DC-MWA, particularly because they rely on a definitive statement from the California Supreme Court regarding differences between California wage law and the FLSA—the type of precedent that is lacking in this case. *See Morillion v. Royal Packing Co.*, 995 P.2d 139, 151 (2000), *as modified* (May 10, 2000).

[7] The 1966 legislation preceded modern Home Rule in D.C. Only in 1973 did Congress pass the Home Rule Act, which allowed D.C. residents to elect a mayor and council and delegated legislative power to the D.C. Council with certain limitations. *See Marijuana Policy Project v. United States*, 304 F.3d 82, 83 (D.C. Cir. 2002).

1260-61 (D.C. Cir. 1972) ("The D.C. Act was patterned on the Fair Labor Standards Act of 1938, as amended, (FLSA) wherein Congress sought to ameliorate conditions found detrimental to the well-being of workers in interstate commerce or the production of goods therefor, by requirements of minimum wages and overtime compensation."). Notably, as discussed further below, the 1966 act diverged from the FLSA in critical ways, as well. *See id.* at 1261. In that light, the Court turns to the history and language of the FLSA.

"Enacted in 1938, the FLSA established a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek." *Integrity Staffing Solutions*, 135 S. Ct. at 516. The FLSA "did not define 'work' or 'workweek,' and [the Supreme] Court interpreted those terms broadly." *Id.* In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, the Supreme Court defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." 321 U.S. 590, 598 (1944). Shortly thereafter, the Supreme Court clarified that physical or mental exertion was not necessary, and that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). The Supreme further explained that "[r]eadiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer." *Id.* The Supreme Court further concluded, "[w]hether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Id.*; *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944). Finally, in *Anderson v. Mt. Clemens Pottery Co.*, the Supreme Court defined "the statutory workweek" to "includ[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a

prescribed workplace." 328 U.S. 680, 690-691 (1946). "Applying these expansive definitions, the Court found compensable the time spent traveling between mine portals and underground work areas, [in] *Tennessee Coal*, and the time spent walking from timeclocks to work benches, [in] *Anderson*." *Integrity Staffing Solutions*, 135 S. Ct. at 516 (citations omitted).

In response to these several decisions and the "flood of litigation" they "provoked," Congress amended the FLSA by passing the Portal-to-Portal Act in 1947. *Id.* at 516-17. Through the Portal-to-Portal Act, Congress "exempted employers from liability for future claims based on two categories of work-related activities." *Id.* at 517. The Act provided as follows:

> (a) Except as provided in subsection (b) [which covers work compensable by contract or custom], no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, ... on account of the failure of such employer ... to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after the date of the enactment of this Act—
>
>> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>>
>> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."

*Id.* (quoting § 4, 61 Stat. 86-87 (codified at 29 U.S.C. § 254(a))) (alterations in the original). Subsequently, the Supreme Court "consistently interpreted 'the term 'principal activity or activities' [to] embrac[e] all activities which are an 'integral and indispensable part of the principal activities.'" *Id.* (quoting *IBP, Inc. v. Alvarez,* 546 U.S. 21, 29–30 (2005)); *see also Steiner v. Mitchell,* 350 U.S. 247, 252–253 (1956) (adopting the "integral and indispensable" analysis). "Other than its express exceptions for travel to and from the location of the employee's 'principal activity,' and for activities that are preliminary or postliminary to that principal

activity, the Portal-to-Portal Act does not purport to change [the Supreme] Court's earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" *IBP, Inc.*, 546 U.S. at 28; *accord* 29 C.F.R. § 785.7.

Turning from the national scene to the District of Columbia, Congress passed the D.C. Minimum Wage Act, which was "modeled on the FLSA," in 1966. *Williams*, 472 F.2d at 1261. "This Act amended the District of Columbia Minimum Wage Law of September 19, 1918, so as to expand coverage to men and to provide for overtime compensation, *inter alia*." *Id.* at 1258 n.1 (citation omitted). However, the terms of the 1966 D.C. Minimum Age Act were not identical to those in the FLSA. *See id.* at 1261 (noting that the D.C. Act did not include the "provision in 29 U.S.C. § 213(b)(1) containing an exemption from overtime requirements as to any employees with respect to whom the ICC (now the Secretary of Transportation) has the power to set maximum hours"). Notably, the 1966 D.C. Act did not include the provisions of the Portal-to-Portal Act, which excluded certain activities from the scope of compensable work.[8] *See* D.C. Minimum Wage Act of 1966, Pub. L. No. 89-685, 80 Stat. 961-71 (codified at D.C. Code § 36-401 *et seq.* (1967)); *see also Calles*, 1991 WL 274268, at *1. The 1966 act specified that "the term 'employ' includes to suffer or permit to work," D.C. Code. 36-402 (1967), but it did not further define work.

A quarter of a century later, pursuant to the D.C. Minimum Wage Act of 1992, the D.C. Council amended and recodified the provisions of the D.C. Minimum Wage Act. *See* Labor—minimum wage—enforcement, 1992 District of Columbia Laws 9-248 (Act 9–394). At that time, the D.C. Council amended the act to include a definition of working time—the definition that

---

[8] Nor was the DC-MWA ever amended to include the provisions of the Portal-to-Portal Act. *See* D.C. Code. § 32-1001, *et seq.*

governs the dispute in this case.[9] *See id.* (codified at D.C. Code § 36-220.1 (1993)). As stated

above, that definition explicitly includes "all the time the employee (a) Is required to be on the

employer's premises, on duty, or at a prescribed place; (b) Is permitted to work; (c) Is required to

travel in connection with the business of the employer; or (d) Waits on the employer's premises

for work." 1992 District of Columbia Laws 9-248 (Act 9–394); *see also* D.C. Code § 32-

1002(10).[10] The definition of working time also includes the instruction that "[i]nterpretations of

what constitutes working time shall be made in accordance with Title 29 of the Code of Federal

Regulations, Part 785, Hours Worked Under the Fair Labor Standards Act of 1938, as amended,

except that references to interpretations of the Portal-to-Portal Act shall have no force and

effect." *Id.*

Defendants argue that the "integral and indispensable" test applicable under the FLSA is

also applicable in defining work under the DC-MWA. Their arguments are unconvincing. In

addressing the statutory instruction that "references to interpretations of the Portal-to-Portal Act

shall have no force and effect" in interpreting the DC-MWA, Defendants argue that the

instruction is necessary—and only necessary—because several categories of working time under

the DC-MWA are explicitly excluded under the FLSA, as amended by the Portal-to-Portal Act.

Defendants are correct that the DC-MWA explicitly includes as compensable several types of

activities that were deemed *compensable* under pre-Portal-to-Portal Act decisions that were then

---

[9] Prior to the 1992 revisions, it appears that the language codified as the statutory definition of working time previously appeared in the regulations interpreting the act. *See Calles*, 1991 WL 274268, at *1 (citing D.C. Mun. Regs., tit. 7, section 999.2 (1986)) ("Indeed, the D.C. Municipal Regulations promulgated pursuant to the D.C. statute define 'working time' to include 'all time the employee ... [i]s *required* to travel in connection with the business of the employer[,]' and [they] specifically provide that 'references to interpretations of the Portal-to-Portal Act shall have no force and effect' in interpreting the term 'working time.'") (emphasis in original).

[10] The provision was subsequently recodified at D.C. Code § 32-1002, but was not subsequently amended otherwise.

*excluded* by virtue of the Portal-to-Portal Act. Specifically, in *Anderson*, the Supreme Court held that the workweek "includ[ed] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." 328 U.S. 690-91. This decision was explicitly curtailed under the Portal-to-Portal Act, which excluded preliminary and postliminary activities from compensable work time. *See Integrity Staffing Solutions*, 135 S. Ct. at 516-17. Yet, under the DC-MWA, working time include "all the time the employee … [i]s required to be on the employer's premises, on duty, or at a prescribed place." D.C. Code 32-1002(10)(a). Similarly, in *Tennessee Coal*, the Supreme Court held that "travel time … spent for the benefit" of employers was compensable. 321 U.S. at 599. So, too, this decision was explicitly curtailed by the Portal-to-Portal Act, which excluded "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" from compensable work time. 29 U.S.C. § 254(a)(1). Yet, by contrast, the DC-MWA explicitly includes "all the time the employee … [i]s required to travel in connection with the business of the employer." D.C. Code § 32-1001(10)(d). Finally, in *Skidmore v. Swift*, the Supreme Court held that time when employees were "engaged to wait" was compensable. 323 U.S. at 136-37. This, too, was curtailed by the Portal-to-Portal Act, which denominated preliminary or postliminary activities as non-compensable. *See IBP, Inc.*, 546 U.S. at 41-42 (concluding that, under the Portal-to-Portal Act, waiting time that preceded employee's principal activities was neither principal activity nor "integral and indispensable" to principal activities). Yet, again, under the DC-MWA, any time "the employee … [w]aits on the employer's premises for work" is compensable working time. D.C. Code § 32-1002(10)(d).

There is no dispute regarding Defendants' characterization of these specific categories of activities; as a general matter, they are compensable under the DC-MWA, but not under the

FLSA. It is the next step in Defendants' argument that is contested—and is ultimately unavailing. Defendants argue that the exclusion of Portal-to-Portal Act precedent from interpretations of the DC-MWA is *limited* to the three aforementioned categories—time spent on an employer's premises, travel time, and waiting time—where the statutes explicitly diverge. They argue that, other than these limited situations, precedent pertaining to the FLSA, including the "integral and indispensable" analysis is applicable under the DC-MWA. This argument is flawed. Just because Portal Act precedent must *necessarily* be excluded from interpretation of the DC-MWA in order to avoid inconsistencies with provisions of the DC-MWA that explicitly conflict with the Portal Act does not mean that the Portal Act precedent ought to be excluded *only* with respect to the interpretation of these specific provisions. Most importantly, the language of the statute contradicts Defendants' argument: the statute instructs, without caveats, that "references to interpretations of the Portal-to-Portal Act shall have no force and effect." D.C. Code § 32-1002(10). There are no limitations on this language, nothing limiting it to the several provisions identified above. Last, but certainly not least, it is wholly sensible to exclude interpretations of the Portal Act from the interpretation of the DC-MWA because the DC-MWA simply does not include the exclusionary language of the Portal Act. Because the DC-MWA does not include the language of the Portal Act, interpretations of the Portal Act have no foundation in the Portal Act context, and it would defy reason to rely on those interpretations in determining the scope of the DC-MWA.

Defendants next argue that the definition of work under the DC-MWA is defined commensurate with the definition of work under the FLSA. Specifically, Defendants argue that the "integral and indispensable" analysis determines the scope of work under the FLSA, separate and apart from its relevance to interpreting the provisions of the Portal Act. Plaintiffs do not

dispute that work under the DC-MWA is defined as is work under the FLSA. But they argue that the "integral and indispensable" test is not applicable to the definition of work itself under the FLSA and, by extension, is not applicable to the definition of work under the DC-MWA. Plaintiffs have the better argument because Defendants ignore both the origin and the function of the "integral and indispensable" analysis in the context of the FLSA, as amended by the Portal-to-Portal Act.

As explained above, the Portal-to-Portal Act excludes two categories of activities from the scope of compensable work under the FLSA. First, traveling to and from to "the actual place of performance of the principal activity or activities which such employee is employed to perform" is excluded if it occurs before or after the period of day when a worker engages in "such principal activity or activities." 29 U.S.C. 254(a). Second, "activities which are preliminary to or postliminary to said principal activity or activities" are excluded if they occur before or after the period of day when a worker engages in "such principal activity or activities." *Id.* The term "integral and indispensable" entered into the Supreme Court's lexicon in *Steiner v. Mitchell* when the Supreme Court was faced with the question of whether the FLSA required compensating employees in a battery plant for time spent changing at the beginning of the shift and showering at the end of the shift. *See* 350 U.S. at 252. The Supreme Court concluded that, while changing and showering were not the principal activities for which the employees were employed *per se*, those activities were compensable because they were "indispensable to the performance of their productive work and integrally related thereto." *Id.* at 255; *see also Integrity Staffing Solutions*, 135 S. Ct. at 518. In other words, the Supreme Court adopted the "integral and indispensable" analysis in order to determine whether activities that were not themselves

principal activities, *per se*, would be nonetheless compensable in light of the restrictive provisions of the Portal-to-Portal Act.

In the more than half century that has passed since *Steiner*, the "integral and indispensable" analysis has been used to determine whether categories of activities—ones that were not *per se* principal activities—were nonetheless compensable under the FLSA, as modified by the Portal-to-Portal Act. *See Integrity Staffing Solutions*, 135 S. Ct. at 517. In *Mitchell v. King Packing Co.,* the Supreme Court concluded that "the knife-sharpening activities of the[] workmen are an integral part of and indispensable to the various butchering activities for which they were principally employed," and, therefore, were compensable even though they were not *per se* principal activities themselves. 350 U.S. 260, 263 (1956). So, too, did the Supreme Court use the "integral and indispensable" analysis in *IBP, Inc.*, and, most recently, in *Integrity Staffing Solutions* in concluding that certain activities were not compensable under the FLSA because they were neither principal activities nor integral and indispensable to principal activities. *See Integrity Staff Solutions*, 135 S. Ct. at 518-19. Accordingly, the "integral and indispensable" test is properly understood as an interpretation of the language "principal activities" in the context of the provisions of the Portal Act, and it is used properly to apply the provisions of the Portal Act to a variety of factual situations.

Defendants offer no real explanation of how or why the integral and indispensable analysis would be sensibly applied outside of the Portal Act context.[11] Defendants rely on three cases—none binding on this Court—to show the "integral and indispensable" analysis is

---

[11] Defendants suggest that, without the limiting impact of the "integral and indispensable" analysis, the scope of compensable work under the DC-MWA would be too wide. However, that suggestion does not provide a basis to import the "integral and indispensable" analysis to the DC-MWA without a grounding in that statute.

applicable outside of the Portal Act context. But, rightly understood, these cases do not stand for

the proposition that the "integral and indispensable" analysis is applicable outside of that context.

First, Defendants look to *Levering v. District of Columbia*, in which another district judge

in this district considered the compensability of (1) canine care activities and (2) canine

transportation activities by Metropolitan Police Department officers. 869 F. Supp. 24, 26-27

(D.D.C. 1994). With respect to the canine care activities, that court explained that "[t]he Fair

Labor Standards Act requires employers to compensate employees for 'activities performed

either before or after the regular work shift ... if those activities are an *integral and indispensable*

*part* of the principal activities for which covered [workers] are employed.'" *Id.* at 26 (quoting

*Steiner*, 350 U.S. at 256) (alterations and emphasis in original). Notwithstanding Defendants'

characterization of the language used by district court, there is no doubt that the district court

itself conducted analysis pursuant to case law interpreting the Portal Act with respect to both

categories of activities.[12]

Second, Defendants look to *Dade County v. Florida*, in which the Eleventh Circuit Court

of Appeals considered whether off-duty physical fitness training for specialized police officers

was compensable. 124 F.3d 1380, 1382 (11th Cir. 1997). In *Dade County*, the Eleventh Circuit

concluded that the off-duty training was not compensable pursuant to the training-specific

regulations promulgated by the Department of Labor. *See id.* at 1385 (citing 29 C.F.R. § 785.27).

The court also noted that the result under the Department of Labor regulations was "identical to

---

[12] The full version of the language that the *Levering* judge quoted from *Steiner* confirms this
assessment: "We, therefore, conclude that activities performed either before or after the regular
work shift, on or off the production line, are compensable *under the portal-to-portal provisions*
of the Fair Labor Standards Act if those activities are an integral and indispensable part of the
principal activities for which covered workmen are employed and are not specifically excluded
by Section 4(a)(1)." *Steiner*, 350 U.S. at 256 (emphasis added).

the result suggested to us by the more general principles that courts have used to define work under the FLSA," which entailed applying the "integral and indispensable" standard. *Id.* at 1385. However, the Eleventh Circuit was clear that the "integral and indispensable" analysis was only relevant because of the provisions of the Portal-to-Portal Act amending the FLSA, *see id.* at 1384, and was undoubtedly using FLSA as shorthand to refer to that amended statutory scheme. In sum, *Dade County* is a Portal-to-Portal Act case as well, and it provides no support to Defendants' claim that the "integral and indispensable" analysis is used to define work pursuant to the FLSA outside of the context of the Portal-to-Portal Act provisions.

Third, in their Reply Brief, Defendants look to *Reich v. New York City Transit Authority*, in which the Second Circuit Court of Appeals considered the compensability of time police department canine handles spent commuting to work with their canine charges. 45 F.3d 646, 647 (2d Cir. 1995). *Reich* is also a Portal-to-Portal Act case, in which the Second Circuit wielded the "integral and indispensable" analysis in determining the compensability of preliminary and postliminary activities. *See id.* at 651. In fact, the wrinkle in this case involved the intersection of two Portal Act provisions—the noncompensability of travel time with the noncompensability of preliminary and postliminary activities. *See id.* at 651-52. Wrinkles aside, *Reich* provides no assistance to Defendants. It simply confirms, yet again, that the "integral and indispensable" lens is applicable only in implementing the provisions of the Portal Act.

In sum, Defendants have identified no authority suggesting that the "integral and indispensable" standard is applicable outside of the Portal Act context. The Court concludes that the "integral and indispensable" analysis is intrinsically tied to the Portal Act's exclusion of certain activities from liability under the FLSA. That is, the Portal-to-Portal Act explicitly exempts certain activities from the definition of compensable work, and the "integral and

indispensable" analysis is used to determine whether or not activities are encompassed within the exclusions of the Portal-to-Portal Act. Because the DC-MWA lacks the exclusionary language of the Portal Act and because it explicitly excludes Portal Act precedent from interpretations of the DC-MWA, the Court concludes that the "integral and indispensable" standard, which was dispositive as to Plaintiffs' uniform maintenance claims under the FLSA, has no relevance to Plaintiffs' claims under the DC-MWA.

**B.  Plaintiffs' Proposed Standard**

For the reasons stated above, the Court agrees with Plaintiffs that the "integral and indispensable" standard does not govern Plaintiffs' DC-MWA claims. Instead, Plaintiffs look to the language of the Department of Labor Regulations to derive a test for compensable work under the DC-MWA. This general approach is supported by the language of the DC-MWA itself. *See* D.C. Code § 32-1002(10) ("Interpretations of what constitutes working time shall be made in accordance with Title 29 of the Code of Federal Regulations, Part 785, Hours Worked Under the Fair Labor Standards Act of 1938, as amended, except that references to interpretations of the Portal-to-Portal Act shall have no force and effect."). While the Court agrees that Plaintiffs' general approach is correct, the Court concludes that Plaintiffs have not fully and properly implemented that approach.

Based on the Department of Labor regulations codified at 29 C.F.R., Part 785, Plaintiffs derive a four prong test for a claim for unpaid wages. They argue that a plaintiff only need to show that "1) the defendant employed him; 2) the defendant suffered or permitted him to perform some form of work; 3) the defendant knew or had reason to believe he was working; and

4) the defendant failed to pay wages required by the Act for the work at issue."[13] Pls.' Opp'n at

10. In support of their proposal, Plaintiffs cites several provisions from the Department of Labor

Regulations implementing the FLSA. First, they look to the statement that "[b]y statutory

definition the term 'employ' includes … 'to suffer or permit to work.'" 29 C.F.R. § 785.6 (citing

29 U.S.C. § 203(g)). Plaintiffs also look to the regulatory provisions explaining the proper

application of the provision denominating "suffer[ing] or permit[ting] to work" as working time.

*See id.* § 785.11 ("Work not requested but suffered or permitted is work time … The employer

knows or has reason to believe that he is continuing to work and the time is working time."); *id.*

§ 785.12 ("The rule is also applicable to work performed away from the premises or the job site,

or even at home."). Second, Plaintiffs quote at length the provision in the regulations describing

the Supreme Court's pre-Portal-to-Portal Act interpretations of the FLSA. For the purposes of

this analysis, it is worth quoting the entirety of the excerpt of that provision included by

Plaintiffs in their brief (which recapitulates the Court's analysis of the early FLSA decisions

above):

> The United States Supreme Court originally stated that employees subject to the
> act must be paid for all time spent in "physical or mental exertion (whether
> burdensome or not) controlled or required by the employer and pursued

---

[13] The Court notes that the standard proposed by Plaintiffs in their Opposition differs in several key respects from the test proposed in their [140] Notice Regarding Plaintiffs' DCMWA Claim, which the Court required Plaintiffs to file prior to Defendants' filing a renewed motion for summary judgment on the DC-MWA claims. *See* Pls.' Notice at (Liability only requires showing that "1) they engaged in physical or mental activity; 2) Defendants required, suffered, or permitted the activity; 3) the activity inured to Defendants' benefit; 4) Defendants knew (or should have known) about the activity; and 5) Defendants failed to pay wages for the activity."). The changes in Plaintiffs' proposal are not proper because they violate the spirit of the Court's Order requiring this Notice in the first place. *See* Order, ECF No. 137 ("Plaintiffs shall file a Notice by no later than MAY 8, 2015, setting out the legal basis for their District of Columbia uniform maintenance claim and citing to District of Columbia precedent demonstrating why summary judgment is not appropriate at this time."). Nonetheless, the Court focuses on the standard that Plaintiffs propose in their Opposition for the sake of simplicity but notes that the Court would also find the standard proposed in their Notice lacking, as well.

necessarily and primarily for the benefit of the employer and his business." (*Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U. S. 590 (1944)) Subsequently, the Court ruled that there need be no exertion at all and that all hours are hours worked which the employee is required to give his employer, that "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer." (*Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *Skidmore v. Swift*, 323 U.S. 134 (1944))

29 C.F.R. § 785.7. With little further analysis, Plaintiffs purport to condense this authority into the four-part test that they formulate: that a plaintiff must show that "1) the defendant employed him; 2) the defendant suffered or permitted him to perform some form of work; 3) the defendant knew or had reason to believe he was working; and 4) the defendant failed to pay wages required by the Act for the work at issue." Pls.' Opp'n at 10.

The Court has no doubt that the first prong of Plaintiffs' proposal—that the defendant employed the plaintiffs—is necessary for liability under the DC-MWA. But it provides no assistance in defining the scope of working time. Both the second and third prongs appear to expand on the statement in the Department of Labor regulations—itself illuminating the language of the FLSA—that "employ" includes "to suffer or permit to work," 29 C.F.R. § 785.6, as well as the application of that language to the determination of working time. *See id.* § 785.11-12. The Court also has no doubt that time in which an employer "suffers" or "permits" an employee to work is included in working time given that the DC-MWA explicitly states that "'working time' means all the time the employee … [i]s permitted to work." D.C. Code § 32-1002(10)(B). Similarly, the Court agrees with Plaintiffs that the Court must interpret the language "permitted to work" in the DC-MWA "in accordance, " *id.* § 32-1002(10), with the Department of Labor regulations interpreting the language "suffer or permit to work." Accordingly, the Court agrees that, if "[the employer] knows or has reason to believe that [the

employee] is continuing to work," such "time is working time." 29 C.F.R. § 785.11. So far, so good.

However, in delineating their proposed standard, Plaintiffs wholly ignore the language of the regulations describing the pre-Portal Act cases that established the scope of work under the FLSA. Specifically, they ignore the language of the regulations explaining that, initially, the Supreme Court explained that compensable work time includes all time "in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." 29 C.F.R. § 785.7 (quoting *Tennessee Coal*, 321 U.S. at 598). They also ignore the agency's explanation that the Supreme Court subsequently clarified this definition, explaining that exertion was not a necessary component of working time and that waiting time could be compensable, as well. *See id.* Plaintiffs quote this language at length but provide no explanation of why these interpretations of the FLSA are inapplicable to the DC-MWA. By contrast, the Court would conclude that these interpretations are central to the definition of work under the DC-MWA. Based on the Supreme Court precedent as recited by the Department of Labor in their regulations, it appears that compensable work time is properly defined as physical or mental exertion, or waiting time, "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."[14] *Tennessee Coal*, 321 U.S. at 598.

Defendants characterize Plaintiffs' proposal as effectively defining "work" as "work" and, thus, providing little assistance in delineating activities that qualify as compensable work. However, Defendants do not actually address the provisions of the Department of Labor

---

[14] Plaintiffs' Notice appears to acknowledge the importance of the language regarding benefit to an employer. *See* Pls.' Notice, ECF No. 140 at 8 (describing the uniform maintenance activities as primarily benefitting Defendants).

Regulations or the pre-Portal Act Supreme Court cases. They simply argue that it is necessary to apply the "integral and indispensable" standard in order to avoid the purported circularity and vagueness they identify in Plaintiffs' definition. However, as explained above, there is no authority or logic supporting the application of the "integral and indispensable" test to the DC-MWA—regardless of any flaws with Plaintiffs' proposed test. Moreover, a faithful application of the Department of Labor Regulations, including the pre-Portal Act Supreme Court precedent on which the regulations rely, successfully avoids the problematic result identified by Defendants of effectively defining "work" as "work."

Accordingly, the Court concludes that Plaintiffs' proposed four-part standard is flawed by omitting the applicable Supreme Court precedent interpreting the FLSA. Based on the authorities cited by the parties, the Court would conclude that working time under the DC-MWA is all employee time—whether it entails exertion or entails waiting—"controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal*, 321 U.S. at 598; *see* 29 C.F.R. § 785.7. The Court would also conclude that working time includes all time an employee is permitted to work as interpreted by the applicable Department of Labor Regulations, thus including time when an employer "knows or has reason to be believe that [the employee] is continuing to work." *Id.* § 785.11. Because neither party proposed or analyzed this standard—although the standard itself emerges from the authority cited by the parties—the Court will allow each party an opportunity to respond to this legal standard, prior to providing Defendants an opportunity to file a renewed motion for summary judgment. The Court will definitively resolve that legal question prior to setting a briefing schedule for such a renewed motion. The Court sets the parameters for the parties' responses in the Order accompanying this Memorandum Opinion.

**C.  Motion to Exclude Testimony of Plaintiffs' Expert Witnesses**

Some procedural history is necessary to explain the Court's resolution of Defendants'

[116] Motion To Exclude Testimony of Plaintiffs' Expert Witnesses. Along with their original

motion for summary judgment, seeking summary judgment on the FLSA and the DC-MWA

uniform maintenance claims, Defendants filed the motion to exclude Plaintiffs' expert witnesses.

In that motion, Defendants primarily argue that the testimony of Plaintiffs' proffered experts is

not admissible pursuant to Federal Rule of Evidence 701, which governs expert testimony. They

also argue that the testimony is inadmissible pursuant to Federal Rule of Evidence 702, which

governs opinion testimony by lay witnesses, and that it should be excluded pursuant to Federal

Rule of Evidence 403, which allows a judge to exclude "relevant evidence if its probative value

is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." Fed. R. Evid. 403. Importantly, this motion was filed in the context of

Defendants' original motion for summary judgment, which did not distinguish between the legal

standards applicable under the FLSA and under the DC-MWA. *See* Defs.' Mem. of Points and

Auth. in Supp. of Defs.' Mot. for Summary Judgment Regarding Pls.' Uniform Maintenance

Claim, ECF No. 106-36, at 21 n.3. Subsequently, the Court granted Defendants' renewed motion

for summary judgment on the FLSA claims without resolving the motion to exclude because the

Court concluded that the FLSA claims would not succeed even if the expert witness testimony

were admissible. *See Dinkel*, 2015 WL 1735078, at *1. At that time, the Court held the motion to

exclude in abeyance pending further proceedings with respect to the DC-MWA claims.

Once again, the Court determines that it need not resolve the motion to exclude in order

to arrive at the conclusion that it must deny without prejudice Defendants' renewed motion for

summary judgment on the DC-MWA claims—for all of the reasons stated above. However, the

Court concludes that it is now proper to deny without prejudice the motion to exclude. That motion was filed under the assumption that the DC-MWA and the FLSA claims in this action were governed by the same precedent. Today, the Court concludes that the precedent that governs the FLSA claims uniform maintenance claims—specifically the "integral and indispensable" test—does not govern the DC-MWA claims. Therefore, the parties' use of the expert testimony in the record will necessarily differ from the use of that testimony in relation to Defendants' original motion for summary judgment. Accordingly, the Court denies without prejudice the motion to exclude. Defendants may raise the arguments presented in this motion once again in the context of a renewed motion for summary judgment that is based on the proper standard for liability under the DC-MWA. At that point, the parties will be positioned to present arguments regarding the admissibility of expert witness evidence in the context of summary judgment arguments made under the proper legal standard. The Court notes, as well, that some of the issues raised in the motion to exclude may be most suitable to resolution in considering pre-trial evidentiary motions—should the DC-MWA claims proceed to trial—rather than in the context of a renewed motion for summary judgment. *See Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 211 n.11 (D.D.C. 2014) *reconsideration denied*, No. CV 11-1623 (RC), 2015 WL 456400 (D.D.C. Feb. 3, 2015) (unnecessary to exclude expert report under Rule 403 at summary judgment stage "because the prejudicial effect of the [evidence] at this stage of proceedings is minimal at best") (citing *Adams v. Ameritech Servs., Inc.,* 231 F.3d 414, 428 (7th Cir. 2000); *Hines v. Consol. Rail Corp.,* 926 F.2d 262, 274 (3d Cir. 1991)).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES WITHOUT PREJUDICE Defendants'

[141] Renewed Motion for Summary Judgment Regarding Plaintiffs' Uniform Maintenance

Claim under the District of Columbia Minimum Wage Act. The Court concludes that Defendants

do not rely on the proper standard for legal standard for liability under the DC-MWA. In

addition, the Court concludes that it is proper to consider Defendants' alternative arguments—

regarding *de minimis* liability and regarding the municipal regulations pertaining to uniform

maintenance by minimum wage employees—only after definitively resolving the legal standard

under the DC-MWA. The Court will consider those arguments if Defendants choose to file a

renewed motion for summary judgment pursuant to the parameters laid out in the Order

accompanying this Memorandum Opinion. In addition, for the reasons stated above, the Court

DENIES WITHOUT PREJUDICE Defendants' [116] Motion to Exclude Testimony. Defendants'

may raise the arguments presented in that motion in subsequent proceedings consistent with this

Memorandum Opinion.

An appropriate Order accompanies this Memorandum Opinion.

Dated: September 1, 2015

                                                       _____/s/_____

                                                       COLLEEN KOLLAR-KOTELLY
                                                       United States District Judge