IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PEGGY DINKEL and DANIELLE FREEMAN,** *et al.*, | : : : |
| Plaintiffs, | : Civil Action No. 11-cv-998 |
| v. | : : |
| **MEDSTAR HEALTH, INC.,** *et al.*, | : |
| Defendants. | : : |

## CONSOLIDATED AMENDED COMPLAINT

Peggy Dinkel and Danielle Freeman ("Plaintiffs"), by and through their undersigned attorneys, hereby make the following allegations against MedStar Health, Inc., MedStar Washington Hospital Center, MedStar Franklin Square Medical Center, MedStar Harbor Hospital, MedStar Union Memorial Hospital and MedStar Good Samaritan Hospital ("Defendants") concerning their acts and status upon actual knowledge and concerning all other matters upon information, belief, and the investigation of their counsel:

### NATURE OF THE ACTION

1. Plaintiffs contend that Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA") by knowingly suffering or permitting Plaintiffs and the members of two collective groups to perform more than *de minimis* meal-break work without paying all wages owed for this work.

2. Plaintiffs who worked for Defendants in the District of Columbia also allege meal break and unpaid work claims under the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001, *et seq*. ("DCMWA").

3. Plaintiffs who worked for Defendants in Maryland also allege meal break claims under the Maryland Wage and Hour Law, Md. Code §§ 3-401, *et seq*. ("MWHL") and the

1

Maryland Wage Payment and Collection Law, Md. Code §§ 3-501, *et seq*. ("MWPCL") and an unpaid work claim under the MWPCL.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this matter pursuant to 29 U.S.C. §216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

5. This Court has jurisdiction over the FLSA claim asserted here pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1332(a)(1), because the matter in controversy in this action exceeds $75,000, exclusive of interest and costs and because the parties are residents of different states.

6. This Court has supplemental jurisdiction over the DCMWA, MWHL and MWPCL claims asserted here pursuant to 28 U.S.C. § 1367(a) because those claims arise from a common set of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form a part of the same case or controversy.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant MedStar Health, Inc. conducts substantial business within this District, and because the actions and omissions giving rise to the claims pled in this Complaint occurred in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(a) as a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

8. Plaintiff Peggy Dinkel is an adult citizen of the State of Virginia. During the relevant period, Ms. Dinkel worked as a Registered Nurse at Washington Hospital Center, was an "employee" of Washington Hospital Center and MedStar as defined by the FLSA and

DCMWA and was not exempt from protection under the FLSA or DCMWA for any reason. During the relevant period, Ms. Dinkel routinely worked more than 40 hours per week, and routinely performed more than *de minimis* meal break and other unpaid work for Defendants without compensation. Ms. Dinkel has previously signed and filed an opt-in consent form relating to her FLSA claim.

9. Plaintiff Danielle Freeman is an adult citizen of the State of Maryland. During the relevant period, Ms. Freeman worked as a Patient Care Technician at Washington Hospital Center, was an "employee" of Washington Hospital Center and MedStar as defined by the FLSA, the MWHL, and the MWPCL, and was not exempt from protection under those laws for any reason. During the relevant period, Ms. Freeman routinely worked more than 40 hours per week, and routinely performed more than *de minimis* meal break work for Defendants without compensation. Ms. Freeman has previously signed and filed an opt-in consent form relating to her FLSA claim.

10. Plaintiffs Sharon Alton, Deidre Beckford, Megan Caine, Jewel Certain, Caitlin Darden, Peggy Dinkel, Valarie Gadson, Janice Harris, Takila Harris, Amanda Haywood, Jovita Ike, Bertha Johnson, Lindsey Johnson, Cathleen Keller, Sharon Kramer, Jean Keppler, Donna Lawrence, Richard Ortiz, Patricia Quinn-Carmichael, Georgianna Rouleau, Vilisini Sarang, Douglas Swick, Surlinder Toor and Milan Vulanovic worked for Defendants in hospitals in the District of Columbia where they performed more than *de minimis* meal break work without receiving all wages owed for this work (the "D.C. Meal Break Plaintiffs").

11. Plaintiffs Judy Bemah, Lisa Braswell, Chevon Braxton, Margaret Brown, Bonita Burnett, Sandra Cain, Bridget Carroll, Robert Concannon, Dorothy Cox, Donnet Durrant, Jessica Eads, Dorothy Eggleston, Danielle Freeman, Amanda Dodd Gardner, Christopher Gardner,

Melissa Gayle, Tia Geddie, Cherry Graziosi, Linda Hagans, Stephanie Holloway, Ann Ile, Gerri Jackwood, Chandra Johnson, Keona Mathes, Erika Murray, Brittany Nicholson, Josephine Sekajipo, Julia Shirima, Michelle Simpson, Lorraine Tyeryar, Elissa White and Julianna Zavattieri worked for Defendants in hospitals in Maryland where they performed more than *de minimis* meal break work without receiving all wages owed for this work (the "Maryland Meal Break Plaintiffs").

12. Plaintiffs Judy Alba, Deidre Beckford, Don Brown, Sharon Davis, Peggy Dinkel, Valarie Gadson, Claudia Green, Leroy Hill, Angelo Horton, Jean Keppler, Wilfredo Mosqueira, Shavon Phelps, Ann Pierce, Marla Pacita Rogelio, Georgianna Rouleau and Vilasini Sarang worked for Defendants in hospitals in the District of Columbia where they performed more than *de minimis* unpaid work without receiving all wages owed for this work (the "D.C. Unpaid Work Plaintiffs").

13. Plaintiffs James Atkinson, Vannie Bell, Minette Blandon, Jovan Bowden, Marsha Brown, Lonzenia Coward, Lawrence Davis, Donet Durrant, Dion Ferrell, Penelope Ganzel, Dahlia Gordon, Cherry Graziosi, Gloria Hackman, Linda Hagans, Phillip Horne, Christine Lewis, Joanne Lower, Adrian Lynch, Dana Martin, Christopher Montalvo, Keith Roberts, Darlene Ruth, Bernadette Simms, Keith Thomas, Claudia Walker, Flossie Williams and Patricia Williams worked for Defendants in hospitals in Maryland where they performed more than *de minimis* unpaid work without receiving all wages owed for this work (the "Maryland Unpaid Work Plaintiffs").

14. Defendant MedStar Health, Inc. ("MedStar") is a company with a principal place of business in Columbia, Maryland. Defendant MedStar, among its various business operations, owns, controls and/or manages at least nine different health care facilities located in Maryland

4

and the District of Columbia.  Throughout the relevant period, MedStar was an "employer" of Plaintiffs as defined by the FLSA and DCMWA, and was actively engaged in the activities described herein.

15.     Defendant MedStar Washington Hospital Center ("WHC") is a not-for-profit 926-bed hospital facility located in Washington, D.C.  Defendant WHC is owned and operated by Defendant MedStar and is a member of the MedStar Health system.  Throughout the relevant period, Defendant WHC was an "employer" of Plaintiffs and was actively engaged in the activities described herein.

16.     Defendant MedStar Franklin Square Medical Center ("FSMC") is a not-for-profit 347-bed hospital facility located in Baltimore, Maryland.  Defendant FSMC is owned and operated by Defendant MedStar and is a member of the MedStar Health system.  Throughout the relevant period, Defendant FSMC was an "employer" of Plaintiffs and was actively engaged in the activities described herein.

17.     Defendant MedStar Harbor Hospital ("HH") is a not-for-profit 179-bed hospital facility located in Baltimore, Maryland.  Defendant HH is owned and operated by Defendant MedStar and is a member of the MedStar Health system.  Throughout the relevant period, Defendant HH was an "employer" of Plaintiffs and was actively engaged in the activities described herein.

18.     Defendant MedStar Union Memorial Hospital ("UMH") is a not-for-profit 249-bed hospital facility located in Baltimore, Maryland.  Defendant UMH is owned and operated by Defendant MedStar and is a member of the MedStar Health system.  Throughout the relevant period, Defendant UMH was an "employer" of Plaintiffs and was actively engaged in the activities described herein.

19. Defendant Good Samaritan Hospital ("GSH") is a not-for-profit 287-bed hospital facility located in Baltimore, Maryland. Defendant GSH is owned and operated by Defendant MedStar and is a member of the MedStar Health system. Throughout the relevant period, Defendant GSH was an "employer" of Plaintiffs and was actively engaged in the activities described herein.

20. Throughout the relevant period, MedStar and all of the hospitals under its ownership and control have been an integrated enterprise with inter-related operations and centralized control of labor relations and personnel management. Throughout the relevant period, MedStar and all of the hospitals under its ownership and control, acting in a joint venture or as joint employers, formulated, approved, and controlled the improper practices described in this Complaint, so are jointly responsible for the improper practices described herein. Throughout the relevant period, MedStar and all of the hospitals under its ownership and control, served as each other's agents and worked in concert to accomplish the actions pled here.

## MATERIAL FACTS

### Meal Break Work

21. Throughout the relevant period, Defendants promised to provide the D.C. and Maryland Meal Break Plaintiffs with one 30-minute unpaid meal break per shift.

22. Having promised the D.C. and Maryland Meal Break Plaintiffs one 30-minute unpaid meal break per shift, Defendants were obligated to ensure these employees were completely relieved from all work-related duties during their unpaid meal breaks, or that they were compensated at an appropriate rate for each of their interrupted meal breaks.

23. Throughout the relevant period, Defendants routinely suffered or permitted the D.C. and Maryland Meal Break Plaintiffs to perform meal break work that included, among

other things: responding to emergency situations, responding to supervisors' instructions, providing patient care and performing typical work duties ("meal break work").

24.     Because of the circumstances under which the D.C. and Maryland Meal Break Plaintiffs performed meal break work, Defendants routinely failed to record all of the time they spent engaged in such work, or include all of this time in calculating their wages.

25.     Throughout the relevant period, Defendants knew that the D.C. and Maryland Meal Break Plaintiffs regularly performed uncompensated meal break work because these employees' supervisors regularly encouraged, instructed, suffered and permitted them to perform this work and observed this work being performed on a regular basis.

26.     Throughout the relevant period, Defendants knew that the D.C. and Maryland Meal Break Plaintiffs regularly performed uncompensated meal break work because these employees routinely engaged in meal break work on Defendants' premises, in plain sight, and at their supervisors' request.

27.     Throughout the relevant period, Defendants knew that the D.C. and Maryland Meal Break Plaintiffs regularly performed uncompensated meal break work because Defendants did not provide specially-assigned relief workers to free these employees from their work obligations during unpaid meal breaks.

28.     Throughout the relevant period, Defendants did not implement or enforce sufficient rules, systems or practices to prevent the D.C. and Maryland Meal Break Plaintiffs from performing uncompensated meal break work.  To the contrary, Defendants' common policies and practices routinely caused the D.C. and Maryland Meal Break Plaintiffs to work during their scheduled, meal breaks.

29. Throughout the relevant period, Defendants did not implement or enforce sufficient rules, policies or practices to ensure that the D.C. and Maryland Meal Break Plaintiffs' meal break work was properly tracked.

30. Throughout the relevant period, Defendants did not implement or enforce sufficient rules, policies or practices to ensure that the D.C. and Maryland Meal Break Plaintiffs were properly paid for all of the meal break work they were suffered or permitted to perform.

31. The Named Plaintiffs are personally familiar with, and were personally affected by, Defendants' meal break work policies and practices. During the relevant period, Defendants suffered or permitted Ms. Dinkel to work during many of her unpaid meal breaks each month without compensation and suffered or permitted Ms. Freeman to work during many of her unpaid meal breaks each month without compensation. From their observation of and interactions with Defendants' other employees, Plaintiffs understand and believe that the D.C. and Maryland Meal Break Plaintiffs regularly performed more than *de minimis* meal break work without compensation.

32. Beginning in October 2015, Defendants implemented an attestation timekeeping system, that required the D.C. and Maryland Meal Break Plaintiffs to attest whether they received a meal break during their shift. If these employees indicated they did not receive a meal break during their shift, they were paid for their meal break that day.

33. As a result of Defendants' conduct, the D.C. and Maryland Meal Break Plaintiffs have been regularly deprived of pay owed for meal break work they performed, including pay calculated at the overtime premium rate for meal break work performed in workweeks where they worked more than 40 hours.

34. As a result of their conduct, Defendants have improperly retained money they should have paid as wages to the D.C. and Maryland Meal Break Plaintiffs. By retaining this money, Defendants have received an inequitable windfall through, *inter alia*, reduced labor and operations costs and enhanced profit margins.

**Unpaid Work**

35. Throughout the relevant period, Defendants maintained, disseminated and enforced policies that required the D.C. and Maryland Unpaid Work Plaintiffs to perform and complete additional work before and/or after their scheduled shifts.

36. Defendants required the D.C. and Maryland Unpaid Work Plaintiffs to perform this additional work for a variety of reasons that inured exclusively to its benefit.

37. Throughout the relevant period, Defendants knew that the D.C. and Maryland Unpaid Work Plaintiffs regularly performed unpaid work because such work, by its very nature, could not be completed during assigned work hours or at assigned work locations.

38. Throughout the relevant period, Defendants knew that the D.C. and Maryland Unpaid Work Plaintiffs regularly performed unpaid work because their supervisors regularly encouraged, instructed, suffered and permitted them members to perform this work.

39. Throughout the relevant period, Defendants knew that the D.C. and Maryland Unpaid Work Plaintiffs regularly performed unpaid work because their supervisors observed the results of this work on a regular basis.

40. Throughout the relevant period, Defendants did not implement or enforce sufficient rules, systems or practices to prevent the D.C. and Maryland Unpaid Work Plaintiffs from performing unpaid work outside of their scheduled shift times, require them to track their performance of unpaid work, or properly compensate them for their unpaid work.

41. Ms. Dinkel is personally familiar with, and was personally affected by, Defendants' unpaid work policies and practices. During the relevant period, Defendants suffered or permitted Ms. Dinkel to perform about 1-2 hours of unpaid work each week before and/or after her scheduled shifts. From her observation of, and interactions with, Defendants' other employees, Ms. Dinkel understands and believes that the D.C. and Maryland Unpaid Work Plaintiffs regularly performed more than *de minimis* unpaid work without compensation.

42. As a result of Defendants' conduct, the D.C. and Maryland Unpaid Work Plaintiffs have been regularly deprived of pay owed for work they performed, including pay calculated at the overtime premium rate for work performed in workweeks where they worked over 40 hours.

43. As a result of their conduct, Defendants have improperly retained money they should have paid as wages to the D.C. and Maryland Unpaid Work Plaintiffs. By retaining this money, Defendants received an inequitable windfall through, *inter alia*, reduced labor and operations costs and enhanced profit margins.

## COLLECTIVE ACTION ALLEGATIONS

44. The D.C. and Maryland Meal Break Plaintiffs bring collective claims under the FLSA, 29 U.S.C. §216(b), seeking unpaid wages, liquidated damages and other damages from Defendants for their unpaid meal break work ("the FLSA Collective").

45. Plaintiffs belong to the FLSA Collective, because they were employed by Defendants during the relevant period and were routinely suffered or permitted to perform more than *de minimis* meal break work for Defendants' benefit without being properly compensated for this work as alleged herein.

46. Although the FLSA Collective members had different job titles and worked in different locations, this action may be properly maintained as a collective action because, throughout the relevant period:

    a. They had at least one shared employer;

    b. Defendants controlled all aspects of the work they performed, set and implemented the policies and procedures applicable to their meal break and uniform maintenance work, determined their job titles, job descriptions and responsibilities, issued their work assignments and assigned and supervised their training;

    c. Defendants maintained common scheduling systems and policies;

    d. Defendants maintained common timekeeping systems and policies;

    e. Defendants maintained a common overtime pay policy;

    f. Defendants maintained common payroll systems and policies;

    g. They were governed by, and subjected to, the same meal-break work policies and practices, and were deprived of wages owed for meal break work; and

    h. Defendants' labor relations and human resources systems were centrally-organized and controlled, and shared a common management team that controlled the policies and practices at issue in this case.

47. Plaintiffs and the FLSA Collective members do not meet any test for exemption under the FLSA.

48. Given the composition and size of the FLSA Collective, its members may be informed of the pendency of this action directly *via* U.S. mail, e-mail and/or through the posting of written notices at Defendants' work sites.

## COUNT I
### Violation of FLSA – Meal Break Work

49. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

50. Plaintiffs and the FLSA collective members are Defendants' employees within the meaning of the FLSA, 29 U.S.C. §216(b).

51. FLSA Section 207(a)(1) states that employers must pay their employees an overtime rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of 40 per week.

52. Throughout the relevant period, Defendants violated the FLSA by requiring Plaintiffs and the FLSA collective members to perform meal break work while failing to properly track the time they spent on this work or pay them all of the overtime wages owed for this work.

53. Plaintiffs and the FLSA collective members have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been deprived of wages owed for work they performed, of which Defendants were aware and from which Defendants derived a direct and substantial benefit.

54. Plaintiffs and the FLSA collective members will continue to suffer a significant loss of income as a result of the policies and practices alleged here unless Defendants are required to alter the practices at issue.

## COUNT II
### Violation of DCMWA – Meal Break Work

55. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

56. The D.C. Meal Break Plaintiffs are or were Defendants' employees within the meaning of the DCMWA.

57. DCMWA Section 32-1003(c) states that employers must pay their employees must be paid an overtime rate, equal to at least 1½ times their regular rate of pay, for all hours

worked in excess of 40 per week.

58. Throughout the relevant period, Defendants violated the DCMWA by requiring the D.C. Meal Break Plaintiffs to perform meal break work while failing to properly track the time they spent on this work or pay them all of the overtime wages owed for this work

59. The D.C. Meal Break Plaintiffs have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been deprived of wages owed for work they performed, of which Defendants were aware and from which Defendants derived a direct and substantial benefit.

60. The D.C. Meal Break Plaintiffs will continue to suffer a significant loss of income as a result of the policies and practices alleged here unless Defendants are required to alter the practices at issue.

## COUNT III
### Violation of MWHL – Meal Break Work

61. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

62. The Maryland Meal Break Plaintiffs are or were Defendants' employees within the meaning of the MWHL.

63. MWHL Sections 3-415(a) and 3-420(a) state that employers must pay their employees must be paid an overtime rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of 40 per week.

64. Throughout the relevant period, Defendants violated the MWHL by requiring the Maryland Meal Break Plaintiffs to perform meal break work while failing to properly track the time they spent on this work or pay them all of the overtime wages owed for this work.

13

65. The Maryland Meal Break Plaintiffs have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been deprived of wages owed for work they performed, of which Defendants were aware and from which Defendants derived a direct and substantial benefit.

66. The Maryland Meal Break Plaintiffs will continue to suffer a significant loss of income as a result of the policies and practices alleged here unless Defendants are required to alter the practices at issue.

## COUNT IV
## Violation of MWPCL – Meal Break Work

67. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

68. Plaintiffs and the Maryland Meal Break Plaintiffs are Defendants' employees within the meaning of the MWPCL.

69. MWPCL Section 3-501 broadly defines the term "wages" and Sections 3-502 to 3-504 require employers to pay all wages owed to their employees on regular paydays determined in advance and prohibit improper wage deductions.

70. Throughout the relevant period, Defendants violated the MWPCL by requiring the Maryland Meal Break Plaintiffs to perform meal break work while failing to properly track the time they spent on this work or pay them all of the overtime wages owed for this work.

71. Defendants' failure to pay the Meal Break Plaintiffs in Maryland was not the result of any *bona fide* dispute within the meaning of MWPCL Section 3-507.2(b).

72. The Maryland Meal Break Plaintiffs have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been deprived of wages owed for work they were permitted to perform and from which Defendants derived a direct and substantial

14

benefit.

73. The Maryland Meal Break Plaintiffs will continue to suffer a significant loss of income as a result of the policies and practices alleged here unless Defendants are required to alter the practices at issue.

## COUNT V
### Violation of DCMWA - Unpaid Work

74. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

75. DCMWA Section 32-1002(10) defines "working time" to mean "all time the employee… is permitted to work" and expressly states that interpretations of the Portal-to-Portal Act shall have no force and effect in this analysis.

76. Throughout the relevant period, Defendants violated the DCMWA by permitting the District of Columbia Unpaid Work Plaintiffs to perform work outside of their scheduled shift times without ensuring this work was properly tracked, or paying all wages owed for this work.

77. The District of Columbia Unpaid Work Plaintiffs have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been deprived of wages owed for work they were permitted to perform and from which Defendants derived a direct and substantial benefit.

78. The District of Columbia Unpaid Work Plaintiffs will continue to suffer a significant loss of income as a result of the policies and practices alleged here unless Defendants are required to alter the practices at issue.

## COUNT VI
### Violation of MWPCL – Unpaid Work

79. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

80. Plaintiffs and the Maryland Unpaid Work Plaintiffs are Defendants' employees within the meaning of the MWPCL.

81. MWPCL Section 3-501 broadly defines the term "wages" and Sections 3-502 to 3-504 require employers to pay all wages owed to their employees on regular paydays determined in advance and prohibit improper wage deductions.

82. Throughout the relevant period, Defendants violated the MWPCL by permitting the Maryland Unpaid Work Plaintiffs to perform work outside of their scheduled shift times without paying all wages owed for this work.

83. Defendants' failure to pay the Maryland Unpaid Work Plaintiffs was not the result of any *bona fide* dispute within the meaning of MWPCL Section 3-507.2(b).

84. The Maryland Unpaid Work Plaintiffs have been harmed as a direct and proximate result of Defendants' unlawful conduct, because they have been deprived of wages owed for work they were permitted to perform and from which Defendants derived a direct and substantial benefit.

85. The Maryland Unpaid Work Plaintiffs will continue to suffer a significant loss of income as a result of the policies and practices alleged here unless Defendants are required to alter the practices at issue.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for an Order:

a. Requiring Defendants to provide Plaintiff's counsel with a list of all names and current (or best known) addresses of all individuals whom Defendants, their subsidiaries or affiliated companies employed at any time during the relevant period;

b. Authorizing Plaintiff's counsel to issue a notice informing the FLSA collective members of the existence and nature of this action;

c. Appointing Stephan Zouras LLP, Whitfield Bryson & Mason LLP and Migliaccio & Rathod LLP as Co-Lead counsel;

d. Finding that Defendants willfully violated the applicable provisions of the FLSA, DCMWA, MWHL, and MWPCL by failing to pay all required wages to Plaintiffs and the collective members;

e. Granting judgment in favor of Plaintiffs and the collective members on their FLSA, DCMWA, MWHL and MWPCL claims;

f. Awarding compensatory damages to Plaintiffs and the collective members in an amount to be determined;

g. Awarding liquidated damages to Plaintiffs and the collective members;

h. Awarding Plaintiffs and the collective members a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action; and

i. Awarding any further relief the Court deems just and equitable.

Respectfully submitted,

Dated: January 16, 2018

*/s/ David J. Cohen*
David J. Cohen
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
(312) 233-1560 fax
dcohen@stephanzouras.com

Gary E. Mason
Danielle L. Perry
WHITFIELD BRYSON & MASON LLP

17

5101 Wisconsin Ave. NW, Ste. 305
Washington, D.C. 20016
(202) 429-2290
(202) 429-2294 fax
gmasony@wbmllp.com
dperry@wbmllp.com

Nicholas A. Migliaccio
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H St NE, Suite 302
Washington, D.C. 20002
(202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

*Counsel for Plaintiffs*