# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into on this 15th day of January, 2018, between, Peggy Dinkel and the *Dinkel* meal-break work collective, as that term is defined in paragraph II.A.1 of this Agreement, Danielle Freeman and the *Freeman* Meal Break Work collective as that term is defined in paragraph II.A.2 of this Agreement, and the Unpaid Work Plaintiffs as that term is defined in paragraph II.A.3 of this Agreement (collectively, "Plaintiffs" or "Settlement Plaintiffs"); and MedStar Health, Inc., MedStar Washington Hospital Center Corporation dba MedStar Washington Hospital Center, Franklin Square Hospital Center, Inc. dba MedStar Franklin Square Medical Center, Harbor Hospital, Inc. dba MedStar Harbor Hospital, The Union Memorial Hospital dba MedStar Union Memorial Hospital, and The Good Samaritan Hospital of Maryland, Inc. dba MedStar Good Samaritan Hospital ("Defendants") (collectively, the "Parties"), to resolve all claims asserted in *Dinkel, et al. v. MedStar Health Inc.*, No. 11-998 (D.D.C.) (*"Dinkel"*) and *Freeman, et al. v. MedStar Health, Inc.*, No. 14-628 (D.D.C.) ("*Freeman*") (the "Lawsuits").

I.   RECITALS

WHEREAS, Plaintiffs filed the Lawsuits in the United States District Court for the District of Columbia on behalf of themselves and similarly situated employees, by their counsel Stephan Zouras LLP, Migliaccio & Rathod LLP and Whitfield Bryson & Mason LLP ("Class Counsel"), alleging that Defendants failed to properly pay certain groups of employees all overtime wages owed for the overtime work they performed in violation of the Fair Labor Standards Act ("FLSA"), the District of Columbia Minimum Wage Revision Act ("DCMWA"), the Maryland Wage and Hour Law ("MWHL") and the Maryland Wage Payment Collection Law ("MWPCL"); and

WHEREAS, this Agreement will finally and fully resolve, settle, release, and discharge all claims alleged or asserted by Plaintiffs against Defendants in the Lawsuits including, without limitation, any claims for unpaid overtime, liquidated or other damages, attorney's fees and costs, and any other claim for relief asserted by the Plaintiffs under federal or state law;

NOW, THEREFORE, in consideration of the mutual covenants and promises contained in this Agreement and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, and to avoid litigation, the Parties hereby agree as follows:

II.   SETTLEMENT PLAINTIFFS

A.   For purposes of this Agreement, the Settlement encompasses the claims of the following individuals (collectively, "Settlement Plaintiffs"):

1.   The "*Dinkel* meal-break work collective", contains Plaintiffs Deidre Beckford, Megan Caine, Jewel Certain, Caitlin Darden, Peggy Dinkel, Valarie Gadson, Jovita Ike, Bertha Johnson, Lindsey Johnson, Jean Keppler, Donna Lawrence, Georgianna Rouleau, Vilisini Sarang, Douglas Swick, Surlinder Toor and Milan Vulanovic;

   2. The "*Freeman* meal-break work collective" contains Plaintiffs Sharon Alton, Judy Bemah, Lisa Braswell, Chevon Braxton, Margaret Brown, Bonita Burnett, Sandra Cain, Bridget Carroll, Robert Concannon, Dorothy Cox, Donet Durrant, Jessica Eads, Dorothy Eggleston, Danielle Freeman, Amanda Dodd Gardner, Christopher Gardner, Melissa Gayle, Tia Geddie, Cherry Graziosi, Linda Hagans, Janice Harris, Takila Harris, Amanda Haywood, Stephanie Holloway, Ann Ile, Gerri Jackwood, Chandra Johnson, Cathleen Keller, Sharon Kramer, Keona Mathes, Erika Murray, Brittany Nicholson, Richard Ortiz, Patricia Quinn-Carmichael, Josephine Sekajipo, Julia Shirima, Michelle Simpson, Lorraine Tyeryar, Elissa White and Julianna Zavattieri; and

   3. The "Unpaid Work Plaintiffs," contains Plaintiffs Judy Alba, James Atkinson, Deidre Beckford, Vannie Bell, Minette Blandon, Jovan Bowden, Don Brown, Marsha Brown, Lonzenia Coward, Sharon Davis, Lawrence Davis, Peggy Dinkel, Donet Durrant, Dion Ferrell, Valarie Gadson, Penelope Ganzel, Dahlia Gordon, Cherry Graziosi, Claudia Green, Gloria Hackman, Linda Hagans, Leroy Hill, Phillip Horne, Angelo Horton, Jean Keppler, Christine Lewis, Joanne Lower, Adrian Lynch, Dana Martin, Christopher Montalvo, Wilfredo Mosqueira, Shavon Phelps, Ann Pierce, Keith Roberts, Marla Pacita Rogelio, Georgianna Rouleau, Darlene Ruth, Vilasini Sarang, Bernadette Simms, Keith Thomas, Claudia Walker, Flossie Williams and Patricia Williams.

  B. Nothing herein shall be construed as an admission or acknowledgement by the Parties that class or collective action treatment is either proper or improper in the Lawsuits, except for purposes of settlement.  Neither the Agreement, nor the Court's approval of the Agreement, shall be admissible in any other proceeding regarding the propriety of class or collective action treatment for the claims at issue.

  C. If the Court does not approve the Parties' proposed settlement, this Agreement is otherwise terminated and the Parties shall not be deemed to have waived their claims, positions, objections, or defenses in the Lawsuits, including their positions on whether the Lawsuits are appropriate for class or collective action treatment.

III.  COMPROMISE ACKNOWLEDGMENT

  A. The Parties have entered into this Agreement as a compromise with respect to their disputed claims.  This Agreement may not be construed as an admission by Defendants of any liability, or any violation of any federal, state, or local law or regulation.  The Parties further agree that Defendants' payment of consideration under this Agreement may not be deemed or construed as an admission of liability or wrongful conduct of any kind.  Defendants expressly deny any liability or wrongdoing of any kind associated with any and all past and present matters, disputes, claims, demands, and causes of action of any kind whatsoever in the Lawsuits. Defendants contend that they have complied with all applicable federal and state laws at all times.  By entering into the Agreement, Defendants do not admit any liability or wrongdoing and expressly deny the same.  It is expressly understood and agreed by the Parties that the Agreement is being entered into by Defendants solely for the purpose of avoiding the costs and disruption of ongoing litigation and resolving the Lawsuits on the terms set forth herein.  Nothing in the Agreement, the settlement proposals exchanged by the Parties, or any motions filed or Orders entered pursuant to the Agreement, may be construed or deemed as an admission by Defendants

of any liability, culpability, negligence, or wrongdoing, including that any Settlement Plaintiff was due any unpaid wages,  and the Agreement, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to in any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce the Agreement.

  B. The Parties have engaged in formal and informal discovery and investigation of the claims and defenses in the Lawsuit, including an analysis of Plaintiffs weekly time and pay data.  The Parties have engaged in arm's-length settlement negotiations informed by this discovery and analysis, including formal mediation with a neutral mediator, Fern Singer, on October 26, 2017.

  C. Nothing in this Agreement, or any statements, discussions, communications, or materials prepared or used during the Parties' settlement negotiations, may be used for any purpose in any other proceeding, except that this Agreement may be used in any proceeding relating to the interpretation or enforcement of this Agreement.  For settlement purposes only, the Parties stipulate to final FLSA certification of the proposed Settlement Collectives for the *Dinkel* Meal-Break Work Collective, the *Freeman* Meal-Break Work Collective and the Unpaid Work Collective.

  D. If this Agreement is terminated as provided herein, certification of the Settlement Collectives will be vacated and the Lawsuits will proceed as if the Settlement Collectives had not been certified.

  IV. <u>TERMS OF THE SETTLEMENT AGREEMENT</u>

    A. Motion for Consolidation of *Dinkel* and *Freeman* Cases and Filing of Consolidated Complaint

    1. The Parties agree that, on or before the filing of the Motion for Approval of the Settlement Agreement, Class Counsel shall file (a) a motion to consolidate the Lawsuits pursuant to Federal Rule of Civil Procedure 42(a)(2); and (b) file a motion for leave to file a Consolidated Amended Complaint ("CAC") in a form agreed to the Parties.  The CAC shall include a new claim for "unpaid work" under the DCMWA.  If for any reason the Court does not approve the Agreement, then Class Counsel shall withdraw the CAC.

    2. The Parties hereby agree and stipulate that Defendants shall not be required to serve or file a responsive pleading in response to the CAC and may rely on the denials of the claims articulated in the Agreement and in the Motion for Approval of the Settlement Agreement.

    B. Settlement Amount and Administration

    1. <u>Maximum Gross Settlement Amount</u>: In full consideration for the terms, conditions, and promises in this Agreement, Defendants agrees to pay a Maximum Gross Settlement Amount not to exceed $600,000.00, except with respect to the employer's share of payroll taxes.  The Maximum Gross Settlement Amount includes all amounts to be paid by

Defendants under this Agreement, namely: settlement payments to Settlement Class members, attorney's fees, litigation costs, interest, penalties, enhancement payments and third-party administrator payments and costs.  In no event shall Defendants be required to pay more than the Maximum Gross Settlement Amount in complete satisfaction of all its obligations under this Agreement, except for Defendants' payment of the employer's share of payroll taxes.

  2. <u>Timing</u>: The Parties' proposed settlement will become final upon entry of an Order by the Court approving the settlement and dismissing Plaintiffs' claims (the "Effective Date").  Defendants will deposit the Maximum Gross Settlement Amount with the Administrator within ten business days of the "Effective Date".

 C. Attorney's Fees and Litigation Costs

  1.  Defendants will not oppose a request by Class Counsel for attorney's fees not to exceed $200,000.00 and litigation costs and expenses not to exceed $110,000.00.  The allocation of fees between Class Counsel and any other attorney representing any member of the Settlement Class shall be the sole responsibility of Class Counsel.  Class Counsel's attorney's fees and litigation costs shall be paid solely from the Maximum Gross Settlement Amount.

  2. Plaintiffs and Class Counsel acknowledge and agree that payment of Class Counsel's fees and costs in the amount ordered by Court in its approval order will fully satisfy and represents all attorneys' fees, costs, and expenses (including but not limited to any fees, costs, and expenses related to depositions, deposition transcripts, transmitting Court-approved notice, reproduction costs, travel expenses, witness fees, and expenses related to testifying and non-testifying experts, consultants, vendors, and claims administrators) incurred by Class Counsel and any attorney or firm representing Plaintiffs and/or Opt-in Plaintiffs, from engagement of counsel through the entry of the Court's Approval Order, in the Lawsuits.  Further, upon execution of the Agreement, Class Counsel will be forever precluded from seeking from Defendants any additional attorneys' fees, costs, and expenses (including but not limited to any fees, costs, and expenses related to depositions, deposition transcripts, transmitting Court-approved notice, reproduction costs, travel expenses, witness fees, and expenses related to testifying and non-testifying experts, consultants, vendors, and claims administrators incurred in the Lawsuits.

  3. Class Counsel further represent and certify that they are not aware of any liens for attorneys' fees, expenses, or costs existing, filed or asserted with respect to any of the claims asserted in the Lawsuits, or by any of the Plaintiffs or Opt-In Plaintiffs.

  4. Within one business day of the Effective Date, Class Counsel will provide the Administrator with a signed IRS form W-9 for the firm designated by Class Counsel to receive Class Counsel's attorney's fees and reimbursement for Class Counsel's litigation costs.

  5. Within twelve business days of the Effective Date, the Administrator will wire the full amount of attorney's fees and litigation costs awarded by the Court to Class Counsel.

D. Enhancement Awards to Plaintiffs: Defendants will not to oppose a request by Class Counsel for the payment of Enhancement Awards to Plaintiffs Deidre Beckford, Lisa Braswell, Margaret Brown, Peggy Dinkel, Donet Durrant, Dorothy Eggleston, Danielle Freeman, Valarie Gadson, Melissa Gayle, Cherry Graziosi, Claudia Green, Kathleen Keller, Donna Lawrence, Christopher Montalvo, Ann Pierce and Lorraine Tyeryar in an amount not to exceed $35,000.00. The allocation of Enhancement Awards between Plaintiffs shall be the sole responsibility of Class Counsel. The Administrator will pay Plaintiffs' Enhancement Awards from the Gross Settlement Amount and issue an IRS Form 1099 to each Enhancement Award recipient. The Plaintiffs who receive an Enhancement Award shall execute a general release of claims against Defendants, and, if a former employee, will agree to a no-rehire provision.

E. Administration Costs: Payment to the Administrator, who will be selected by Plaintiffs, subject to approval by Defendants, including payment for all services and mailings, shall be made from the Gross Settlement Amount. The Parties will seek approval of the Administrator in the Approval Order. The Administrator shall, among other things: (a) provide notice of the settlement to Settlement Class members; (b) administer the claims process; (c) set up and administer a qualified settlement fund to disburse settlement payments; (d) distribute all settlement checks; (e) address any questions from Settlement Class members; (f) prepare and mail all necessary IRS W-2 and 1099 forms; (g) withholding the Settlement Class members' share of payroll taxes and remitting such funds to the appropriate taxing authorities, along with associated tax reporting, return and filing requirements; and (h) perform any other duties necessary to effectuate the Agreement. All disputes relating to the Administrator's performance of its duties shall be referred to the Court, if necessary, in connection with the Court's continuing jurisdiction of the terms and conditions of the Settlement until all payments and obligations contemplated by the Agreement shall be carried out.

F. Employer Payroll Taxes: As set forth in paragraph IV(B), the employer share of FICA, FUTA, SUTA, Medicare and any other applicable payroll taxes for the payment amounts allocated to Settlement Class members shall be paid separately by Defendants in addition to the Maximum Gross Settlement Amount.

V. PAYMENT AMOUNTS TO THE SETTLEMENT CLASS MEMBERS

A. The Maximum Gross Settlement Amount, less all amounts required to be paid under paragraphs IV(C) to IV(E) (the "Net Settlement Amount") will be allocated among the Settlement Plaintiffs as follows:

1. $212,000.00 to the *Dinkel* and *Freeman* Meal Break Plaintiffs, with each Meal Break Plaintiff receiving a minimum payment of $500.00 plus their *pro rata* share of the remaining amount based on the number of weeks they worked during the relevant period. Defendants will provide Class Counsel and the Administrator with a list of the weeks worked by each Meal Break Plaintiff based on their time and pay records. For the purposes of this allocation, "Qualifying Weeks" shall include weeks worked in a department that was conditionally certified by the Court where the individual worked sufficient hours to receive overtime compensation if auto-deducts were reversed during those weeks. The Administrator will calculate the value allocated to each Meal Break Plaintiff.

5

   2. $43,000.00 to the Unpaid Work Plaintiffs, with each Unpaid Work Plaintiff receiving the sum of $1,000.00.

  B. Settlement Plaintiffs will each receive a check with a Release on the back of the check.  Settlement Plaintiffs will not receive a Settlement Payment if they fail to negotiate the check they receive in a timely manner.

  C. Settlement Payments for Settlement Plaintiffs will be allocated for income tax purposes as being paid 50% as wages and 50% as liquidated damages, penalties and interest.

  D. The Administrator will calculate all typical employee-side taxes (including FICA, FUTA, SUTA, Medicare) for each Settlement Plaintiff and withhold these amounts from their Settlement Payment.  The Administrator will also issue an IRS form W-2 to all Settlement Plaintiffs at the times and in the manner required by the Internal Revenue Code of 1986 and consistent with this Agreement for the portion of each payment attributable to wages and an IRS form 1099 for the portion attributable to non-wage income.  If the Internal Revenue Code, the regulations issued thereunder, or other relevant tax laws change after the Effective Date, the processes in this sub-paragraph may be modified in a manner to ensure compliance with such changes.

  E. Each Settlement Plaintiff will be solely responsible for the payment of taxes (federal, state, and local) as a result of any payment made under this Agreement.  Plaintiffs shall hold Defendants harmless and indemnify Defendants for any liabilities, costs and expenses, including attorneys' fees and fines, assessed or caused by any such taxing authority which result, either from a Settlement Plaintiff's failure to remit taxes due on payments made to the Settlement Plaintiff pursuant to the Agreement.  Class Counsel shall hold Defendants harmless and indemnify Defendants for any liabilities, costs and expenses, including attorneys' fees and fines, assessed or caused by any such taxing authority which result from the tax treatment of incentive awards under this Agreement.

  F. Waiver And Release

   1. In exchange for the Settlement Payment and the other good and valuable consideration provided pursuant to the terms of this Agreement, Settlement Plaintiffs who negotiate the checks they receive as a result of this Settlement, and their heirs, descendants, dependents, executors, administrators, successors, assigns, and attorneys, fully and finally releases and forever discharges Defendants, their prior and present subsidiaries, parents, insurers, benefit plans, affiliates, predecessors, successors, representatives, officers, directors, agents, attorneys, accountants, assigns, and employees, in their personal, individual, official, and/or corporate capacities, from any and all claims and rights of any kind that they may have, whether known or unknown, whether contingent or non-contingent, whether specifically asserted or not, arising through the date of approval of this Agreement by the Court, that are based upon any claims under the FLSA, DCMWA, MWHL, and MWPCL, and any other similar local, state, and federal wage and hour, wage payment laws, and common law theories arising or accruing prior to the date of the order approving the settlement, including, but not limited to, claims for penalties, interest, liquidated or other damages, litigation costs, and attorney's fees (collectively,

"Released Claims").  Nothing in this Agreement shall be considered a waiver of any claims by Settlement Plaintiffs that may arise after the date the Agreement is approved by the Court.

2. In exchange for the Enhancement Awards set forth in paragraph IV(D), Plaintiffs Deidre Beckford, Lisa Braswell, Margaret Brown, Peggy Dinkel, Donet Durrant, Dorothy Eggleston, Danielle Freeman, Valarie Gadson, Melissa Gayle, Cherry Graziosi, Claudia Green, Kathleen Keller, Donna Lawrence, Christopher Montalvo, Ann Pierce and Lorraine Tyeryar ("Enhancement Award Plaintiffs"), on their own behalf, and on behalf of their , and their heirs, descendants, dependents, executors, administrators, successors, assigns, and attorneys, fully, finally, and forever agree unconditionally to release and discharge Defendants and their prior and present subsidiaries, parents, insurers, benefit plans, affiliates, predecessors, successors, representatives, officers, directors, agents, attorneys, accountants, assigns, and employees, in their personal, individual, official, and/or corporate capacities, from any and all claims that they might otherwise have had a right to pursue against Defendants or any of them at any time prior to the execution of this Agreement and from any and all claims otherwise relating to any facts, circumstances or other matters which arose at any time prior to the execution of this Agreement.  The Parties understand the word "claims" to include, without limitation, any complaints, charges, disputes, rights, wage or benefit payment issues, damages or liabilities of any kind that may have arisen during or relate to Enhancement Award Plaintiffs' employment with Defendants, including any and all claims that could be brought under any federal or state statute, regulation, executive order, public policy or other law that provides protection to employees or other individuals, and including the claims brought by Enhancement Award Plaintiffs in the Lawsuits.  These claims and rights released include, but are not limited to, claims under Title VII of the Civil Rights Act of 1964; the Age Discrimination in Employment Act; 42 U.S.C. § 1981; the Equal Pay Act; the Americans With Disabilities Act; the Genetic Information Nondiscrimination Act; Section 503 and 504 of the Rehabilitation Act of 1973; the Family Medical Leave Act, the Fair Labor Standards Act; the National Labor Relations Act; the Labor Management Relations Act of 1947; the Employee Retirement Income Security Act of 1974; the Occupational Safety and Health Act; the Older Workers' Benefit Protection Act, the Workers' Adjustment and Retraining Notification Act, as amended; the District of Columbia Human Rights Act; the District of Columbia Family and Medical Leave Act; the District of Columbia Workers' Compensation Act; the District of Columbia Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001, *et seq.*; the Maryland Fair Employment Practices Act, Md. Code Ann., Art. 20 *et seq.*; the Maryland Wage and Hour Law, Md. Code Ann., Labor & Employment, § 3-401, *et seq.*; the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor & Employment, § 3-501, *et seq.*; state, civil, or statutory laws, including any and all human rights laws and laws against discrimination or retaliation, any other federal, state or local fair employment or whistle-blower statute, code or ordinance, common law, contract law, tort, including, but not limited to, fraudulent inducement to enter into this contract, and any and all claims for attorney's fees.   This release does not extend to claims that cannot be released as a matter of law, but the Parties acknowledge their intent that this release be construed as broadly as legally permissible.  The Enhancement Award Plaintiffs and their counsel represent that they know of no claim that has not been released by this paragraph.

3. In addition, Lisa Braswell, Peggy Dinkel, Donet Durrant, Dorothy Eggleston, Danielle Freeman, Valarie Gadson, Melissa Gayle, Cherry Graziosi, Claudia Green, Cathleen Keller, Donna Lawrence, Christopher Montalvo, and Lorraine Tyeryar ("Former

Enhancement Award Plaintiffs") agree never to seek or accept employment relationship with Defendants (or any of their divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, and their successors and/or assigns), and agree that this Agreement shall be used as the basis for Defendants not to hire Former Enhancement Award Plaintiffs in any capacity whatsoever after the execution of this Agreement.  In the event that Former Enhancement Award Plaintiffs are ever mistakenly employed by Defendants, Former Enhancement Award Plaintiffs agree to have their employment relationship terminated with no resulting claim or cause of action against Defendants.   Former Enhancement Award Plaintiffs acknowledge and agree that they have no right to an employment relationship with Defendants, that Defendants may legally refuse to employ them, and that Defendants (or any of their divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, and their successors and/or assigns), are entitled to reject, without cause, any application for employment or engagement by Former Enhancement Award Plaintiffs, and such rejection shall not constitute retaliation or violation under federal or state statutory law or under common or tort law

4.     In addition, Deidre Beckford, Margaret Brown and Ann Pierce shall execute an attestation certifying compliance with Defendants' wage and hour policies and procedures in the form attached to the Agreement as Exhibit A.

5.     The Parties acknowledge that the above waiver and release was separately bargained for and is a material element of this Agreement.

6.     The negotiation of a Settlement Payment check by any Plaintiff shall fully effectuate the release provisions herein. Any Settlement Plaintiffs who fail to execute their Settlement Payment check will be deemed to have their claims dismissed with prejudice as of the date of the Court's approval order.

G.     Court Approval and Distribution of Plaintiffs' Payments

1.     The Parties agree to submit a joint motion for settlement approval with a proposed order by January 8, 2018.  The proposed order shall:  (i) grant final judgment on the Released Claims; (ii) adjudge the terms of this Agreement to be fair, reasonable and adequate, and in the best interests of Settlement Plaintiffs, and direct consummation of its terms and provisions; (iii) approve Plaintiffs' request to consolidate the Lawsuits and to file the consolidated amended complaint; (iv) approve Class Counsel's application for an award of Class Counsel's fees, costs and expenses; (v) dismiss the Released Claims from the Lawsuits on the merits and with prejudice, and permanently enjoining all Settlement Plaintiffs from prosecuting against Defendants any Released Claims; (vi) approve settlement administrator retained by the Parties; and (vi) assert and retain jurisdiction over the claims alleged, the Parties in the Lawsuits, and the implementation and supervision of this Agreement.

2.     Within ten business days after the Court enters the Parties' proposed order, or a materially identical Order, Defendants shall deposit the Maximum Gross Settlement Amount of $600,000.00 into the Settlement Fund.

3. Five days after the Court enters an order approving the terms of this Agreement, Defendants shall provide the Administrator with its records of the final list of Settlement Plaintiffs agreed to by the Parties. The list shall include the name, last known address, email address, social security number, telephone number and qualifying weeks worked for each Settlement Plaintiff. Class Counsel may also provide address information to the Administrator.

4. Fourteen days after approval of the settlement is granted, the Administrator shall distribute settlement award checks *via* first-class mail to all Settlement Plaintiffs with a release on the back of the check. The mailing will also enclose a notice of settlement document agreed upon by the Parties that shall inform Settlement Plaintiffs that in order to participate in the settlement and receive payment under the settlement, they must negotiate the check in a timely manner, and that by doing so they shall be enjoined from pursuing any Released Claims against Defendants in the future.

5. For any notices and checks returned "undeliverable," the Administrator will use available databases in an effort to find Settlement Plaintiffs and will re-mail the notice within five days of obtaining a more current address. Class Counsel are free to provide at any time address information to the Administrator.

6. The Administrator will provide weekly updates to the Parties as to the number and names of Plaintiffs who have negotiated the checks issued to them.

7. If a Settlement Plaintiff does not negotiate his or her check within 110 days of mailing, the amount shall remain in the Settlement Fund for discretionary use by the Parties for the next 90 days, including to pay individuals who are not part of the settlement but who have made allegations of the same kind as those that the Settlement Plaintiffs have, or to pay Settlement Plaintiffs who did not negotiate the check sent to their last known address within 110 days of mailing. Any such individuals who receive payment pursuant to this provision of the Agreement shall also be bound by the Release set forth herein and the Court's Approval Order.

8. Any funds remaining in the Settlement Fund after 200 days of the original Settlement Payment mailing shall revert to Defendants.

9. The Parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treas. Reg. section 1.468B-1. In addition, the Parties will jointly and timely make the "relation back election" to the earliest permitted date, as provided in Treas. Reg. section 1.468B-1(j)(2). Such election will be made in compliance with the procedures and requirements set forth in such Treasury regulations. The Administrator is solely responsible for preparing and delivering the necessary documents for signature by the Parties and making the appropriate filing.

9

10. For purposes of Internal Revenue Code of 1986 section 468B and Treas. Reg. section 1.468B-2(k)(3), the Administrator will be the qualified settlement administrator and will timely and properly file all information and other tax returns necessary or available with respect to the settlement amounts including, without limitation, the returns described in Treas. Reg. sections 1.468B-2(k)(1) and 1.468B-(2)(l). The returns will be consistent with this Agreement and will reflect that all taxes, including any estimated taxes, interest, or penalties arising with respect to the income earned by the Maximum Gross Settlement Amount, will be paid out of the Final Settlement Amount. All taxes, expenses, and costs incurred relating to the operation and implementation of this paragraph, including, without limitation, any expenses of tax counsel or accountants and mailing costs and expenses relating to the filing or failing to file any returns ("tax expenses") will be paid out of the Final Settlement Amount and income earned on this amount. Taxes and tax expenses will be treated as, and considered to be, a cost of administering the individual settlement amounts and the qualified settlement administrator will be obligated to withhold from individual settlement amounts any funds necessary to pay such taxes and tax expenses and any taxes that may be required to be withheld pursuant to Treas. Reg. section 1.468B-2(l)(2).

11. During any period the Final Settlement Amount is not a qualified settlement fund for tax purposes, the qualified settlement Administrator will pay to Defendants in a timely fashion from the Final Settlement Amount sufficient funds to enable it to pay taxes, including any estimated taxes, interest, or penalties on income earned by the Final Settlement Amount, other than interest or penalties incurred by Defendants as a result of any action or inaction on the part of Defendants that caused the Final Settlement Amount to be treated as other than a qualified settlement fund. The parties agree to cooperate with the qualified settlement administrator and each other and their tax attorneys and accountants to the extent necessary.

12. The Parties shall cooperate fully to resolve promptly any issues identified by the Administrator regarding notice to Settlement Plaintiffs, the administration of the settlement and disbursement of settlement payments, and any other issues related to the Administrator's duties under this Agreement.

VI. DISMISSAL OF ACTION WITH PREJUDICE

Settlement Plaintiffs who timely negotiate the checks issued to them accept the benefits provided herein as consideration in full and complete satisfaction and release of all the claims asserted in the Lawsuits and covered in this Agreement. Such Settlement Plaintiffs agree that all of their claims asserted in the Lawsuits shall be dismissed with prejudice, and that, once the Court issues its Approval Order, the Lawsuits shall be dismissed even if some Settlement Plaintiffs do not cash their Settlement Payment check.

VII. GENERAL PROVISIONS

A. Confidentiality

The Parties agree that proposed settlement terms shall remain confidential and not be disclosed to the media or public until the Agreement is filed for approval with the Court. The Parties and their counsel agree not to make any disparaging public statements. The Parties agree

10

that this settlement involves the resolution of (1) meal break claims and (2) unpaid work claims, as set forth in consolidated amended complaint.

    B.    Construction and Interpretation

The Parties hereto agree that the terms and conditions of the Agreement are the result of lengthy, intensive, arms-length negotiations among the Parties, and the Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of the Agreement. Paragraph titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions. Each term of this Agreement is contractual and not merely a recital. This Agreement shall be subject to, governed and construed and enforced in accordance with the laws of the State of Maryland and subject to the continuing jurisdiction of the United States District Court for the District of Columbia. The Parties agree that the Court shall retain jurisdiction to enforce the terms of this Agreement unless specifically set forth otherwise herein.

    C.    Parties' Authority

    1.    The signatories to this Agreement represent that they are fully authorized to enter into this Agreement and to bind the parties hereto to the terms and conditions of the Agreement.

    2.    The Parties acknowledge that throughout negotiations they have been represented by counsel experienced in wage and hour collective litigation and that this Agreement is made with the consent and approval of counsel who have prepared the Agreement.

    D.    Mutual Full Cooperation

The Parties agree to cooperate fully to implement and effectuate the terms of this Agreement, including executing all necessary documents. Plaintiffs acknowledge that they will, together with Class Counsel, seek Court approval of this Agreement such that it will bind themselves to all terms set forth in this Agreement.

    E.    Enforcement Actions

The Settlement Plaintiffs acknowledge and agree that they are enjoined from pursuing any Released Claims against Defendants based on any act or omission up to the date the Court enters its Approval Order. If any Party institutes any legal action or other proceeding for the purpose of enforcing this Agreement against any other party, the unsuccessful party shall be required to pay the successful party all reasonable attorney's fees and costs incurred in enforcing the Agreement.

    F.    Modification

This Agreement and its exhibits may not be changed, altered, or modified, except in a writing signed by the parties and approved by the Court.

G. Entire Agreement

This Agreement and its exhibits constitute the entire agreement between the parties concerning the subject matter hereof. No extrinsic evidence of any kind shall modify or contradict the terms of this Agreement.

H. Voiding The Agreement

1. In the event the Court does not enter an Order approving the Parties' proposed settlement, this Agreement shall be null and void in its entirety.

2. If the Court does not enter an Order approving the Parties' proposed settlement, the Parties shall attempt to reach agreement on provisions rejected by the Court for a period not less than 30 days after the date on which approval is denied. The parties shall file a joint motion for a stay of the action during this 30-day period.

I. Counterparts

This Agreement may be executed in counterparts, and when each party has executed at least one counterpart, the counterpart will be deemed an original, and when taken together, the counterparts will constitute one Agreement, which shall be binding and effective as to all Parties.

J. Binding on Assigns And Successors

This Agreement shall be binding upon, and inure to the benefit of, the Parties, and their respective heirs, trustees, executors, successors, legal administrators, and assigns, and the other releasees.

K. No Assignment

Class Counsel and the Settlement Plaintiffs represent and warrant that nothing which would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuits, or any related action. Upon the Effective Date of this Agreement, Settlement Plaintiffs shall be deemed to have given this warranty.

L. Miscellaneous

1. The headings contained in this Agreement are for reference only and are not to be construed as part of the Agreement.

2. Class Counsel hereby represent that they are fully authorized to enter into this Agreement by the Settlement Plaintiffs and to bind the Settlement Plaintiffs hereto to the terms and conditions hereof.

3. The Parties agree they must reach agreement on the form and content of the Consolidated Amended Complaint, the Agreement and its exhibits, the Approval Order, the General Release, and the Motion for Approval.

4. The Parties agree that in the event they dispute and reach impasse as to any of the settlement terms or the form and content of any documents necessary to effectuate the Agreement, General Release, or Approval Order that cannot be resolved among the Parties themselves, any and all such disputes may be submitted to Ms. Fern Singer, or by a mediator agreed to by Class Counsel and Defendants' Counsel, if Ms. Singer is unavailable. The Parties agree to equally divide the fees and expenses of such mediator in the event his or her services are necessary to finalize the Agreement, General Release or the proposed Approval Order, but the Parties shall bear their own expenses for attorneys' fees, expenses and costs in connection therein.

5. If a dispute arises out of this agreement, such dispute is to be decided by Ms. Fern Singer or by the Judge presiding over this Action in the United States District Court for the District of Washington D.C. should Ms. Singer be unavailable.

In witness hereof, the Parties' duly authorized representatives have executed this Agreement below.

Dated: January __, 2018                     _____
                                             Peggy Dinkel, Plaintiff


Dated: January __, 2018                     _____
                                             Danielle Freeman, Plaintiff


Dated: January __, 2018                     _____
                                             David J. Cohen
                                             STEPHAN ZOURAS, LLP
                                             604 Spruce Street
                                             Philadelphia, PA 19106
                                             (215) 873-4836
                                             (312) 233-1560 fax

                                             Nicholas A. Migliaccio
                                             Jason S. Rathod
                                             MIGLIACCIO & RATHOD LLP
                                             412 H St NE, Suite 302
                                             Washington, D.C. 20002
                                             (202) 470-3520

3. The Parties agree they must reach agreement on the form and content of the Consolidated Amended Complaint, the Agreement and its exhibits, the Approval Order, the General Release, and the Motion for Approval.

4. The Parties agree that in the event they dispute and reach impasse as to any of the settlement terms or the form and content of any documents necessary to effectuate the Agreement, General Release, or Approval Order that cannot be resolved among the Parties themselves, any and all such disputes may be submitted to Ms. Fern Singer, or by a mediator agreed to by Class Counsel and Defendants' Counsel, if Ms. Singer is unavailable. The Parties agree to equally divide the fees and expenses of such mediator in the event his or her services are necessary to finalize the Agreement, General Release or the proposed Approval Order, but the Parties shall bear their own expenses for attorneys' fees, expenses and costs in connection therewith.

5. If a dispute arises out of this agreement, such dispute is to be decided by Ms. Fern Singer or by the Judge presiding over this Action in the United States District Court for the District of Washington D.C. should Ms. Singer be unavailable.

In witness hereof, the Parties' duly authorized representatives have executed this Agreement below.

Dated: January 17, 2018

_____
Peggy Dinkel, Plaintiff

Dated: January __, 2018

_____
Danielle Freeman, Plaintiff

Dated: January __, 2018

_____
David J. Cohen
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
(312) 233-1560 fax

Nicholas A. Migliaccio
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H St NE, Suite 302
Washington, D.C. 20002
(202) 470-3520

3. The Parties agree they must reach agreement on the form and content of the Consolidated Amended Complaint, the Agreement and its exhibits, the Approval Order, the General Release, and the Motion for Approval.

4. The Parties agree that in the event they dispute and reach impasse as to any of the settlement terms or the form and content of any documents necessary to effectuate the Agreement, General Release, or Approval Order that cannot be resolved among the Parties themselves, any and all such disputes may be submitted to Ms. Fern Singer, or by a mediator agreed to by Class Counsel and Defendants' Counsel, if Ms. Singer is unavailable.  The Parties agree to equally divide the fees and expenses of such mediator in the event his or her services are necessary to finalize the Agreement, General Release or the proposed Approval Order, but the Parties shall bear their own expenses for attorneys' fees, expenses and costs in connection therein.

5. If a dispute arises out of this agreement, such dispute is to be decided by Ms. Fern Singer or by the Judge presiding over this Action in the United States District Court for the District of Washington D.C. should Ms. Singer be unavailable.

In witness hereof, the Parties' duly authorized representatives have executed this Agreement below.

Dated: January __, 2018

_____
Peggy Dinkel, Plaintiff

Dated: January 17, 2018

_____
Danielle Freeman, Plaintiff

Dated: January 16, 2018

_____
David J. Cohen
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
(312) 233-1560 fax

Nicholas A. Migliaccio
Jason S. Rathod
MIGLIACCIO & RATHOD LLP
412 H St NE, Suite 302
Washington, D.C. 20002
(202) 470-3520

Gary E. Mason
Danielle L. Perry
WHITFIELD BRYSON & MASON LLP
5101 Wisconsin Ave. NW, Ste. 305
Washington, D.C. 20016
(202) 429-2290
(202) 429-2294 fax

*Class Counsel*

Dated: January 17, 2018

Joshua B. Waxman, D.C. Bar 482135
S. Libby Henninger, D.C. Bar 976352
Littler Mendelson, P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006-4046
202.842.3400 (telephone)
202.842.0011 (facsimile)
jwaxman@littler.com
lhenninger@littler.com

Angelo Spinola, admitted pro hac vice
LITTLER MENDELSON, P.C.
3344 Peachtree Road N.E., Suite 1500
Atlanta, GA 30326
404.233.0330 (telephone)
404.233.2361 (facsimile)
aspinola@littler.com

*Counsel for Freeman Defendants*

Dated: January 17, 2018

Emmett F. McGee, D.C. Bar No. 456498
JACKSON LEWIS, P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, MD 21209
(410) 415-2003
(410) 415-2001 fax
emmett.mcgee@jacksonlewis.com

*Counsel for Dinkel Defendants*

14

Dated: January 17, 2018

_____
MedStar Health, Inc.

Dated: January 17, 2018

_____
MedStar Washington Hospital Center
Corporation dba MedStar Washington Hospital
Center

Dated: January 17, 2018

_____
Franklin Square Hospital Center, Inc. dba
MedStar Franklin Square Medical Center

Dated: January 17, 2018

_____
Harbor Hospital, Inc. dba MedStar Harbor
Hospital

Dated: January 17, 2018

_____
The Union Memorial Hospital dba MedStar
Union Memorial Hospital

Dated: January 17, 2018

_____
The Good Samaritan Hospital of Maryland, Inc.
dba MedStar Good Samaritan Hospital

# Exhibit A

**CURRENT EMPLOYEE CERTIFICATION**

**If you are employed by MedStar Washington Hospital Center Corporation dba MedStar Washington Hospital Center, Franklin Square Hospital Center, Inc. dba MedStar Franklin Square Medical Center, Harbor Hospital, Inc. dba MedStar Harbor Hospital, The Union Memorial Hospital dba MedStar Union Memorial Hospital, and The Good Samaritan Hospital of Maryland, Inc. dba MedStar Good Samaritan Hospital (each a "Defendant" and collectively "Defendants") as of [ORDER DATE] you shall timely complete and return this Current Employee Certification.**

If I am a current employee of any Defendant, I acknowledge, understand, and agree that, at any time that I am now or hereafter employed by Defendants, I will do the following:

1. Regardless of my job position now or in the future, I agree I will always (a) carefully review Defendant's payroll policies and procedures, remain up to date on any changes to such policies, and conduct myself in full compliance with such policies; (b) timely notify my supervisor of any questions I may have pertaining to these policies and procedures; and (c) timely and carefully review my paychecks and notify my supervisor of any concerns I may have regarding the accuracy of my paychecks;

2. If I am now or hereafter employed by Defendant in a non-exempt position, I agree I will always: (a) comply with Defendant's payroll reporting policies and with the requirements of the FLSA and any state wage and hour requirements to the best of my ability; (b) accurately report all working time; (c) accurately report any meal periods that I do not take or that are interrupted by work-related activities; (d) timely and carefully review my time records and notify my supervisor of any concerns I may have regarding the accuracy of my time records; (e) report to my supervisor if I am instructed by anyone to work "off-the-clock," and if I have not received a response within three (3) business days of such report, acknowledge and agree that I will notify my HR manager; and (f) report to my supervisor if I am instructed by anyone not to report a meal period that was not taken or a meal period interrupted by work, and if I do not receive a response within three (3) business days, I acknowledge and agree that I will notify my HR manager.

Sign Here: _____